http://www.va.gov/vetapp16/Files4/1634340.txt

Citation Nr: 1634340 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 09-16 232 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia

THE ISSUES

1. Entitlement to an increased disability rating for bilateral flat feet and heel spurs, currently rated as 30 percent disabling.

2. Entitlement to an initial disability rating higher than 20 percent for osteomyelitis of the left heel.

ATTORNEY FOR THE BOARD

K. J. Kunz, Counsel

INTRODUCTION

The Veteran served on active service from April 1988 to August 1988.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. In an August 2008 rating decision, the RO denied a disability rating higher than 30 percent for bilateral flat feet and heel spurs. In a July 2010 rating decision, the RO granted service connection for osteomyelitis of the left heel, and assigned a 20 percent disability rating.

In September 2012, the Board remanded the case to the RO for additional action. The Board finds that the RO has fulfilled the remand instructions.

FINDINGS OF FACT

1. From August 15, 2008, bilateral flat feet and heel spurs produced pain and diminished endurance that limited weightbearing and produced pronounced functional impairment.

2. Osteomyelitis of the left heel has been manifested by recurrent infections and intermittent pain limiting endurance for weightbearing, without involucrum, sequestrum, or constitutional symptoms, producing moderately severe but not severe disability.

CONCLUSIONS OF LAW

1. From August 15, 2008, to October 16, 2008, January 1, 2009, to March 3, 2011, and May 1, 2011, forward, bilateral flat feet and heel spurs met the criteria for a 50 percent rating. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. Part 4, including §§ 4.1, 4.2, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5015, 5276 (2016).

2. Osteomyelitis of the left heel has not met the criteria for rating higher than 20 percent. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. Part 4, including §§ 4.1, 4.2, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5000, 5284 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a) (2016). Under the notice requirements, VA is to notify the claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, VA will attempt to obtain. 38 C.F.R. § 3.159(b). 

The RO provided the Veteran notice in letters issued in August 2008, October 2008, April 2011, and January 2013. In those letters, the RO notified her what information was needed to substantiate claims for service connection and increased disability ratings. The letters also addressed how VA assigns effective dates.

The Board is satisfied that there has been substantial compliance with the directives of the September 2012 Board remand, such that additional remand is not needed. See Stegall v. West, 11 Vet. App. 268 (1998).

The claims file contains service medical records, post-service medical records, and VA examination reports. The examination reports and other assembled evidence are sufficient to reach decisions on the issues on appeal.

The Board finds that the Veteran was notified and aware of the evidence needed to substantiate the claim, as well as the avenues through which she might obtain such evidence, and the allocation of responsibilities between the Veteran and VA in obtaining such evidence. The Veteran actively participated in the claims process by providing evidence and argument. Thus, she was provided with a meaningful opportunity to participate in the claims process, and she has done so.

Ratings for Bilateral Flat Feet and Heel Spurs
and for Osteomyelitis of the Left Heel

The two disabilities that the present appeal addresses are rated separately, but both involve the Veteran's feet and are addressed by much of the same evidence. In the interests of efficiency, thoroughness, and clarity, the Board will address both rating issues in one discussion.

Service connection for the Veteran's bilateral flat feet and heel spurs has been in effect from September 11, 1997. The RO assigned a 30 percent disability rating from that date. The Veteran has had several foot surgeries over the years. The RO granted temporary total (100 percent) ratings after surgeries, and assigned a 30 percent rating following each temporary total period. In August 2008, the Veteran sought a rating higher than 30 percent for his flat feet and heel spurs. She contends that between surgeries the disability produces symptoms and limitations that warrant ratings higher than 30 percent.

The findings of a bone scan in December 2009 led to a diagnosis of osteomyelitis in the Veteran's left heel. In a July 2010 rating decision, the RO granted service connection for left heel osteomyelitis, as a disorder evaluated separately from her bilateral flat feet and heel spurs. The RO made service connection for the osteomyelitis effective February 12, 2009, and assigned a 20 percent disability rating. The Veteran appealed, contending that the disability produces impairment that warrants a higher rating.

VA assigns disability ratings by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. Part 4, including §§ 4.1, 4.2, 4.10. If two ratings are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In determining the current level of impairment, the disability must be considered in the context of the whole recorded history, including service medical records. 38 C.F.R. § 4.2. The United States Court of Appeals for Veterans Claims (Court) has held that, at the time of the assignment of an initial rating for a disability following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999). The Court also has indicated that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating was filed until a final decision is made. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

When evaluation of a musculoskeletal disability is based on limitation of motion, VA regulations provide, and the Court has emphasized, that evaluation must include consideration of impairment of function due to such factors as pain on motion, weakened movement, excess fatigability, diminished endurance, or incoordination. 38 C.F.R. §§ 4.40, 4.45, 4.59; see DeLuca v. Brown, 8 Vet. App. 202 (1995). Determination of impairment due to such factors is to be expressed, if feasible, terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, or incoordination.

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a claim, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107. To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The rating schedule provides for percentage ratings for bilateral flat foot as follows:

Pronounced; marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achillis on manipulation, not improved by orthopedic shoes or appliances .................................... 50

Severe; objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, characteristic callosities ...... 30

Moderate; weight-bearing line over or medial to great toe, inward bowing of the tendo achillis, pain on manipulation and use of the feet ..................................................... 10

Mild; symptoms relieved by built-up shoe or arch support .. 0

38 C.F.R. § 4.71a, Diagnostic Code 5276.

The RO has considered the Veteran's heel spurs under 38 C.F.R. § 4.71a, Diagnostic Code 5015, under which new benign growths of bone are rated on limitation of motion of the affected parts, as degenerative arthritis is rated, based on the diagnostic code for the joint involved. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2016). The rating schedule does not provide ratings for limitation of motion of joints in the foot.

The rating schedule provides for percentage ratings for osteomyelitis, whether acute, subacute, or chronic, as follows:

Of the pelvis, vertebrae, or extending into major joints, or with multiple localization or with long history of intractability and debility, anemia, amyloid liver changes, or other continuous constitutional symptoms ........................ 100

Frequent episodes, with constitutional symptoms .......... 60

With definite involucrum or sequestrum, with or without discharging sinus ................................................ 30

With discharging sinus or other evidence of active infection within the past 5 years ........................................... 20

Inactive, following repeated episodes, without evidence of active infection in past 5 years ................................. 10

38 C.F.R. § 4.71a, Diagnostic Code 5000.

The Board has considered whether any other diagnostic codes are appropriate in this case. The rating schedule provides for rating other foot injuries under 38 C.F.R. § 4.71a, Diagnostic Code 5284 (2015). Under that code, a separate rating for the disability in each foot may be assigned. However, Diagnostic Code 5284 applies only to injuries that are not addressed by other diagnostic codes. See Copeland v. McDonald, 27 Vet. App. 333, 337 (2015). As the Veteran's foot disorders are addressed by Diagnostic Code 5276 for pes planus, Diagnostic Code 5015 for bone growths for the heel spurs, and Diagnostic Code 5000 for the osteomyelitis, the Board will not use Diagnostic Code 5284 to evaluate his disorders.

The claims file contains record of treatment of the Veteran from 1997 forward by private podiatrist K. E. C., D.P.M., and records of VA treatment. The Veteran underwent right foot surgery, including release of the tarsal tunnel, in July 2000, and left foot surgery, including resecting heel spurs, in December 2000.

Through the period for which ratings are appealed, the Veteran has reported working in corrections and police facilities. In VA treatment in May 2008, she reported pain, soreness, and tightness in her feet. She indicated that the symptoms made her unable to stand for long periods or to exercise. In private treatment in July 2008, she reported left heel pain. Dr. C. found bony regrowth that needed revision. In VA treatment in August 2008, a podiatrist noted pain on palpation of the Veteran's left tendo achillis.

In an August 2008 statement, the Veteran wrote that she had extreme stiffness and soreness in her feet, with pain upon awakening. She reported that she walked with a limp and was unable to run. She stated that the foot problems reduced her mobility and made her unable to seek jobs that required considerable time on her feet. She stated that a new spur on her left heel would require surgery. 

On VA examination in August 2008, the Veteran reported constant pain in her heels, with pain at rest that worsened with standing or walking. The examiner observed bilateral pes planus, with a moderate degree of forefoot/midfoot malalignment in each foot. There was tenderness in both feet. The examiner found that the Veteran's gait was within normal limits. The examiner stated that the disorder did not limit the Veteran's daily activity.

In a September 2008 statement, the Veteran wrote that her bilateral foot disorders made her unable to bear weight for longer than 30 minutes, and limited her to sedentary jobs.

In October 2008, the Veteran underwent left foot surgery that included resection of a retrocalcaneal spur. The RO assigned a temporary 100 percent rating from October 17 through December 31, 2008, and a 30 percent rating from January 1, 2009.

After the 2008 surgery the Veteran had physical therapy and continued in VA podiatry treatment. In February 2009, she stated that after a long day she had pain in the back of her left heel. She reported drainage from the surgical incision. The treating podiatrist observed small gaps in incision sites, some edema, and drainage upon compression, with no malodor. The podiatrist's assessment was stitch abscess. Treatment included antibiotics. In March 2009, sutures in the left heel were surgically removed. In April 2009, MRI showed an incomplete tear at the attachment site of the left Achilles' tendon, and showed soft tissue inflammatory changes.

In VA podiatry treatment in May 2009, measurements of the Veteran's right foot were consistent with severe flat foot. She reported a longstanding and ongoing limp due to her bilateral foot disorders. She reported having completed a course of antibiotics. The treating podiatrist noted a slightly compensated antalgic gait. Drainage at the left heel surgical incision site was addressed by surgical removal of sutures. On follow-up later in May, the Veteran stated that the left heel wound occasionally bled, but that there was no pustular drainage. The podiatrist found no edema, malodor, or signs of erythema, drainage, or bacterial infection. The podiatrist observed a slight antalgic limping type gait.

In a May 2009 statement, the Veteran wrote that the condition of her feet had not improved. She reported that her left foot was healing slowly from the 2008 surgery. She indicated that she had pain and soreness with any activity. She stated that she had greatly decreased endurance in standing and walking, and that she was on walking restrictions at her job. She related that about half the time she was unable to stand or walk. She asserted that the assigned 30 percent rating did not adequately consider the impact of her symptoms and repeated surgeries on her work and daily activities.

In VA treatment in July 2009, the Veteran reported left heel blisters and swelling. The treating podiatrist found signs of bacterial infection, with cellulitis or abscess. He prescribed antibiotics. In August 2009, the Veteran stated that she continued to have blisters on her left heel and pain in that area. In September 2009, she reported recurring swelling and formation of large blisters at her left heel. She indicated that she still had not been able to return to full walking at work. In October 2009, she related mild ongoing swelling at the left heel. The treating podiatrist noted two small recurrent abscesses. In November 2009, she reported ongoing pain and swelling of her left heel, causing her to place more weight on her right foot. She stated that her right foot now had swelling and pain with walking. The podiatrist noted at the left heel edema, drainage, moderate pain to palpation, and signs of bacterial infection.

In private treatment in December 2009, podiatrist Dr. C. ordered a bone scan, which had findings at the left heel consistent with osteomyelitis. An infectious disease specialist diagnosed osteomyelitis.

In VA treatment in January and February 2010, the treating podiatrist continued antibiotics for the Veteran's left heel osteomyelitis. In March 2010, the Veteran reported a very small amount of drainage from her left heel, and ongoing light duty status at work. Examination was negative for pain on manipulation of the left heel. In April 2010, it was noted that she continued to limp due to left heel pain. The treating podiatrist certified that the Veteran needed to wear shoes that did not have a hard back.

In an April 2010 statement, the Veteran wrote that bilateral foot disorders had reduced the strength of her feet for years, and made her unable to do prolonged standing and walking. She stated that the 2008 left heel surgery had been followed by complications, including several infections and abscesses, and that the area still has not completely healed. She stated that she had exhausted sick leave addressing the problems, and remained on walking restrictions at work. She reported being on antibiotics for six months to treat osteomyelitis. 

In June 2010, the Veteran had VA emergency department treatment for a left heel abscess, with swelling, draining pus, extreme pain, and inability to walk. A treating physician observed an abscess, cellulitis, and evidence of pain. Beginning in July 2010, private podiatry treatment for the left heel osteomyelitis and abscess included intravenous antibiotics.

In a July 2010 statement, the Veteran reported that the intravenous antibiotic treatment for her left heel osteomyelitis was time consuming and interfered with work and daily activities.

On VA examination in August 2010, the Veteran reported constant pain, described as 6 out of 10, in the heels and soles of both feet. She stated that with activity, including prolonged standing and walking, her feet had swelling and exacerbated pain. She indicated having had walking restrictions since October 2008, and continuing to be unable to walk or stand for prolonged periods due to the pain. The examiner found that both feet had tenderness and pes planus. Both Achilles tendons were in normal alignment. Each foot had slight forefoot and midfoot valgus malalignment that could not be corrected by manipulation. X-rays showed pes planus deformity in both feet, a plantar calcaneal spur in the right foot, and surgically placed screws in the left foot. Shoe inserts were required. The examiner found that the Veteran's gait was within normal limits, and did not observe limitations on standing or walking. The examiner stated that the pes planus did not limit the Veteran's usual occupation or daily activity. The examiner noted that pain and skin breakdown at the left heel made the Veteran unable to walk or stand for long periods.

Notes from VA podiatry treatment in September 2010 reflect ongoing treatment for chronic osteomyelitis. In a private orthopedic consultation in November 2010, the Veteran reported that her job in a file room allowed periods of sitting but required periods of standing. The clinician found bilateral pes planus, a gait that was slightly antalgic on the left, and decreased endurance for standing.

Treatment notes reflect that the Veteran continued to experience drainage from an abscess in her left heel. Dr. C. recommended surgery to remove residual sutures from the abscess area. In March 2011, the Veteran underwent left heel surgery which included with deep tissue debridement to remove scar tissue and old sutures. The RO granted a temporary 100 percent rating from March 4, 2011, and returned the rating for bilateral flat feet and heel spurs to 30 percent from May 1, 2011. In April 2011, the Veteran reported that she required special considerations at work to minimize walking.

In VA podiatry treatment in January 2012, the Veteran reported right heel pain. A posterior right heel spur was noted. She related intermittent minimal pain in the left heel. The treating podiatrist prescribed heel lifts. In May 2012, private podiatrist Dr. C. indicated that the Veteran was to be restricted to wearing tennis shoes at all times. Notes of VA treatment in June 2012 reflect ongoing pain medication for foot pain.

In VA podiatry treatment in December 2012, the Veteran reported continued pain in the back of both heels, worse in the right foot. X-rays showed posterior and plantar heel spurs in the right foot, and a plantar spur and Achilles tendon repair in the left foot. Notes from VA primary care in November 2013 reflect ongoing foot pain and an antalgic gait. In January 2014, she had VA emergency department treatment for severe burning right foot pain that was constant for five days and then intermittent. Right foot x-rays showed posterior and plantar heel spurs. A treating clinician found that the pain was likely due to nerve irritation from arthritis.

On VA examination in December 2014, the Veteran reported that her bilateral foot disabilities had gotten worse. She described her bilateral foot pain as including soreness, burning, throbbing, and a needles sensation. She indicated that her feet also had stiffness, swelling, and numbness. She reported that weakness in her feet impeded climbing and made her unable to run. She indicated that with weightbearing activity symptoms worsened and she began limping. She stated that at work and in public she avoided stairs and used the elevator if possible. She indicated that she had restless sleep because of the pain.

The examiner reported having reviewed the Veteran's claims file. The examiner found that the Veteran had bilateral pes planus. On examination, both of her feet had decreased arch height. Her feet did not have marked pronation or other marked deformity. In both feet pain was accentuated on manipulation. There was pain on movement, and with and without weightbearing. Swelling was not observed. There were characteristic calluses on the left foot. Her feet did not have extreme tenderness of the plantar surfaces. Neither foot did had marked inward displacement and severe spasm of the Achilles tendon. With repeated use of the feet the symptoms interfered with walking and standing, and limited functional ability. She used arch supports, which reportedly provided some relief of symptoms. The examiner described the functional effects of her pes planus as limitations on standing and walking.

In an April 2015 statement, the Veteran wrote that she had recurring fractured heel spurs. She stated that her foot disorders continued to preclude stair climbing, impair her mobility, and reduce her capacity for daily activities. 

On VA examination in May 2015, it was noted that, following a 2008 surgery, the Veteran had chronic and recurrent drainage from her left heel, diagnosed in 2009 as osteomyelitis. The Veteran reported that presently, three to four times a week, her left heel and ankle had severe pain, tenderness, stiffness, swelling, popping, weakness, and diminished endurance. It was noted that the osteomyelitis was treated with antibiotics in 2010. The examiner described the osteomyelitis as chronic. There were not reported additional episodes or recurrent infections since 2010. Left foot x-rays showed two bone anchors in the posterior calcaneus, reflecting prior Achilles tendon repair, and no x-ray evidence of other significant abnormality. The examiner noted that the Achilles tendon repair and residuals of left heel osteomyelitis produced partial impairment of physical activities of employment, in that it precluded running, jumping, climbing, prolonged standing, and prolonged walking.

In a December 2015 rating decision, the RO granted separate service connection for scarring on the left heel.

From the Veteran's increased rating claim received August 15, 2008, forward, during those periods when temporary total ratings following surgeries were not in effect, her bilateral flat feet and heel spurs produced pain that worsened with weightbearing. Those disorders considerably limited her capacity for weightbearing, and limited the types of tasks she could do at work. The functional impairment from the pes planus and heel spurs was comparable to extreme plantar tenderness and produced pronounced limitations. The disability from pes planus and heel spurs thus more nearly approximated the Diagnostic Code 5276 criteria for a 50 percent rating than those for a 30 percent rating. The Board therefore grants a 50 percent rating for the bilateral pes planus with heel spurs.

The Veteran's left heel disability due to osteomyelitis and related complications following the 2008 surgery was manifested initially by recurrent drainage, infections, and abscesses that required medical attention, and later by residual intermittent severe pain in the left heel and ankle. That disorder further limits the Veteran's capacity for weightbearing. No involucrum or sequestrum has been found, and no constitutional symptoms have been noted, so there is no basis for a rating higher than 20 percent under Diagnostic Code 5000. The impairment due to left heel osteomyelitis, as distinguished from the impairment due to flat foot and heel spurs, has been as great as moderately severe, but has not extended to severe. The osteomyelitis therefore has not warranted a higher than 20 percent rating under Diagnostic Code 5284. Thus, the preponderance of the evidence is against a rating higher than 20 percent.

When there is an exceptional disability picture, such that the rating schedule criteria do not reasonably describe a claimant's disability level and symptomatology, an RO may refer a case to the VA Under Secretary for Benefits or to the Director of the VA Compensation and Pension Service for consideration of an extraschedular rating. See 38 C.F.R. § 3.321(b)(1) (2016); see also Thun v. Peake, 22 Vet. App. 111, 115 (2008). Extraschedular ratings are limited to cases in which it is impractical to apply the regular standards of the rating schedule because there is an exceptional or unusual disability picture, with such related factors as frequent hospitalizations or marked interference with employment. 38 C.F.R. § 3.321(b)(1).

Despite multiple foot surgeries over the years, the Veteran's foot disabilities have not required so many hospitalizations as to be considered frequent. In addition, her foot surgery hospitalizations have been directly compensated through temporary total ratings. Her bilateral flat foot and heel spurs and her left heel osteomyelitis have made her unable to do work that requires more than minimal weightbearing, but have not markedly interfered with sedentary employment. Her foot disabilities can be adequately and appropriately addressed under the regular rating schedule. Therefore, it is not necessary to refer the present rating issues for consideration of extraschedular ratings.

The Court has indicated that VA must consider, in an increased rating claim, whether the record indirectly raises the issue of unemployability. Rice v. Shinseki, 22 Vet. App. 447 (2009). Over time the Veteran has become limited to largely or completely sedentary work. In jobs that do not require weightbearing, however, she has maintained substantially gainful employment. Thus, the record does not directly or indirectly raise the issue of unemployability.

ORDER

From August 15, 2008, to October 16, 2008, January 1, 2009, to March 3, 2011, and May 1, 2011, forward, a 50 percent disability rating for bilateral pes planus and heel spurs is granted, subject to the laws and regulations controlling the disbursement of monetary benefits.

Entitlement to a disability rating higher than 20 percent for osteomyelitis of the left heel is denied.

____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs