Citation Nr: 1719088 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-28 184A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent for ankylosing spondylitis with sacroiliitis and bilateral L5 spondylolysis. 

2. Entitlement to an initial disability rating in excess of 10 percent for an autoimmune condition with manifestations of fatigue, associated with ankylosing spondylitis with sacroiliitis and bilateral L5 spondylolysis. 

3. Entitlement to an initial disability rating in excess of 10 percent for an adjustment disorder with mixed anxiety and depression. 

4. Entitlement to a temporary total evaluation because of treatment for a service-connected condition requiring convalescence. 

5. Entitlement to an effective date earlier than July 24, 2014, for the award of service connection for an adjustment disorder with mixed anxiety and depression.



REPRESENTATION

Appellant represented by: John S. Berry


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

R. Costello, Associate Counsel


INTRODUCTION

The Veteran had active duty service from April 2010 to October 2012.

These matters come before the Board of Veterans' Appeals (Board) on appeal from April 2013, August 2014, and May 2015 rating decisions of the VA Regional Office (RO) in Lincoln, Nebraska. 

The Board notes the Veteran now resides in Connecticut, and the RO should transfer jurisdiction of her file, if appropriate.

In April 2015, the Veteran appeared and provided testimony in regards to her increased rating claim for ankylosing spondylitis at a Board hearing before the undersigned Veterans Law Judge (VLJ). A transcript of that hearing is associated with the record. At the time of the hearing, that was the only issue on appeal. The Veteran subsequently perfected appeals as to the remaining issues via VA Form 9's submitted in June and September 2015. She declined a hearing on the other issues.

While additional evidence has been added to the claims file subsequent to the last RO adjudications, in March 2017 the Veteran's representative submitted a waiver of RO consideration of the additional evidence. Therefore, the Board can proceed. 

The issues of entitlement to an initial disability rating in excess of 10 percent for an autoimmune condition with manifestations of fatigue and entitlement to an initial disability rating in excess of 10 percent for an adjustment disorder with mixed anxiety and depression are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's ankylosing spondylitis is manifested by pain with flexion greater than 60 degrees and a combined range of motion greater than 120 degrees, and without muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. 

2. The evidence shows that the Veteran's right foot surgery did not result in a period of convalescence in excess of a month or severe postoperative residuals, and the disability did not require immobilization by cast.

3. The Veteran separated from active service on October 4, 2012. 

4. The earliest date of receipt of a pending claim for service connection for anxiety residuals is January 17, 2013, within one year of the Veteran's separation from active service.

5. The Veteran showed signs of anxiety and an adjustment disorder related to her service-connected ankylosing spondylitis during service.



CONCLUSIONS OF LAW

1. The criteria for an initial disability rating in excess of 10 percent for ankylosing spondylitis with sacroiliitis and bilateral L5 spondylolysis has not been met. 38 U.S.C.A. §§ 1155, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.14, 4.25, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5024-5240 (2016).

2. The criteria for entitlement to a temporary total evaluation because of treatment for a service-connected condition requiring convalescence have not been met. 38 U.S.C.A § 1156 (West 2014); 38 C.F.R. §§ 3.102, 4.30 (2016).

3. The criteria for an effective date of October 5, 2012, but no earlier, for service connection for an adjustment disorder with mixed anxiety and depression is met. 38 U.S.C.A. §§ 1155, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 3, 3.400 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Neither the Veteran nor her representative has raised any specific issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). All of the attorney's submissions were boilerplate generalities as to VA's duties to notify and assist, without raising any concerns specific to this case and this Veteran. Finally, neither the Veteran nor her representative has raised any issues concerning the hearing held before the undersigned with respect to the claim for an increase for ankylosing spondylitis. See Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010).


Increased Rating for Ankylosing Spondylitis

Disability evaluations are determined by comparing a veteran's present symptoms with the criteria set forth in the VA Schedule for Rating Disabilities, which is based upon average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Staged ratings are appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). After careful consideration of the evidence, any reasonable doubt is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Neither the Veteran nor her representative has raised any other issues than those discussed below, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, No. 15-2818, 2017 U.S. App. Vet. Claims LEXIS 319, *8-9 (Vet. App. March 17, 2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

The Veteran claims her service connected ankylosing spondylitis is more severe than the ratings reflect. Specifically, she testified at her April 2015 Board hearing that her disease is active and should be rated under the Diagnostic Code for rheumatoid arthritis. While she does not have limitation of motion, it was extremely painful for her to move in any direction. 

The Veteran is currently rated at 10 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5024-5240. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.2. Diagnostic Code 5024 states diseases under this code will be rated as arthritis based on limitation of motion of the affected parts and Diagnostic Code 5240 refers to ankylosing spondylitis. Although the Veteran and her representative claim her disability should be rated under Diagnostic Code 5002 for rheumatoid arthritis because her condition has been found to be medically active, the July 2014 VA examiner found the Veteran was not diagnosed with rheumatoid arthritis, but instead ankylosing spondylitis. Moreover, there is a diagnostic code specifically applicable to her service-connected condition, so there is no reason it should be rated under another code. Application of Diagnostic Code 5002 in this situation is simply not warranted where there is a diagnostic code on point and where a medical professional has opined she does not have rheumatoid arthritis. See Copeland v. McDonald, 27 Vet. App. 333 (2015) (an analogous rating may be assigned only where the service connected condition is "unlisted").

Disabilities of the spine are rated under the General Rating Formula for Rating Diseases and Injuries of the Spine, which was provided to the Veteran in the July 2013 statement of the case and will not be repeated here. 

The evidence of record reveals that the Veteran does not warrant a disability rating in excess of 10 percent for her ankylosing spondylitis. Indeed, a March 2012 medical evaluation board proceeding revealed her range of motion testing exceeded normal ranges with no significant changes with repetition. The February 2013 VA examiner found her flexion was at worst to 90 degrees or greater with painful motion and her combined range of motion testing was well over 120 degrees. The July 2014 VA examiner found the Veteran had full range of motion even on repetitive use testing, despite complaints of pain on movement. Although the examiner found the Veteran had intervertebral disc syndrome (IVDS), a subsequent July 2014 VA addendum opinion clarified that the Veteran's reported incapacitating episodes were best described as manifestations of the fatigue and pain noted as a symptoms of her autoimmune disease. Additionally, the medical evidence of record does not reveal any muscle spasms or guarding severe enough to result in abnormal gait or abnormal spinal contour and the Veteran does not claim such. 

Despite the fact she has full range of motion, the Veteran has been assigned a 10 percent rating which compensates her for the painful motion and any functional loss due to flare-ups of pain. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-7 (1995). Without actual limitations of motion or the other symptoms listed in the rating criteria for spine disabilities, she is not entitled to a higher rating.

The Board has also considered whether separate ratings are warranted for any additional neurological impairment attributed to the Veteran's ankylosing spondylitis. However, the Board finds the evidence of record is absent any evidence of neurological symptoms related to the spine during the pendency of the entire appeal. Accordingly, a separate rating for neurological abnormalities is not warranted.

Therefore, a rating in excess of 10 percent for ankylosing spondylitis is denied. As the preponderance of the evidence is against assignment of a higher rating, the benefit-of-the doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. at 53-56.

Convalescent Rating

The Veteran asserts she should receive a temporary total evaluation for the period of convalescence after having surgery to correct her hallux valgus of the right foot. Her representative elaborates in the June 2015 notice of disagreement that the May 2015 rating decision failed to take into consideration the fact that the Veteran's ankylosing spondylitis made it very difficult for her to get around "at the best of times," and she was required to wear a post-operative orthopedic shoe, which also made ambulating difficult. 

Regulations pertaining to the assignment of temporary total ratings for convalescence are under 38 C.F.R. § 4.30 and were provided to the Veteran in her July 2015 statement of the case and will not discussed herein. 

The Board notes that in November 2013 the Veteran underwent a right foot bunionectomy. However, the Board finds a temporary total disability rating for convalescence is not warranted. Indeed, a November 18, 2013, VA record notes the Veteran was six day status post bunionectomy of the right foot and continued to utilize crutches for balance. She was recommended continued elevation whenever possible. A November 25, 2013, record notes the Veteran was two weeks status post right bunionectomy and was found to have coordination within normal limits, stable foot posture without obvious structural deformities, good muscle strength to all prime movers of the foot and ankle with adequate muscle tone and symmetry, and normal postoperative range of motion. She was advised to continue ice and elevation and instructed to begin active and passive range of motion exercise in the right great toe joint. She was recommended to continue use of her postoperative shoe and there was no mention of continued use of crutches. Her records do not indicate she required at least one month of convalescence, since she was able to bear weight and do range of motion exercises two weeks following surgery even while wearing a post-operative shoe. Also, there is no evidence of severe postoperative residuals. Her records indicate she healed well postoperatively. 

Although the Veteran's representative avers that the May 2015 rating decision did not take into consideration the fact that the Veteran's ankylosing spondylitis made it very difficult for her to get around, the Board notes that at the time of the Veteran's January 2014 claim and in subsequent statements she indicated her convalescence claim was based on her November 2013 right foot surgery, not her service-connected ankylosing spondylitis. Although it may have been difficult to get around, that is not the standard for a total rating based on convalescence. She states since her last follow-up appointment was six weeks after the surgery, then it took her more than a month to recover, but, again, that is not the standard. She was not immobilized with a cast, her postoperative residuals were not severe as defined by the regulation, and nowhere in her medical records did any provider suggest she needed at least one month of convalescence to recover from the surgery. 

For these reasons, a temporary total disability rating for convalescence is not warranted. There is a preponderance of the evidence against the claim, and as such, the benefit-of-the-doubt provisions do not apply. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. at 53-56.


Earlier Effective Date

Unless otherwise specifically provided in Chapter 51 of Title 38 of the United States Code, the effective date of an award based on an original claim shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. 38 U.S.C.A. § 5110(a). Title 38 of the Code of Federal Regulations clarifies that an award of direct service connection will be effective on the day following separation from active military service or the date on which entitlement arose if the claim is received within one year of separation from service. Otherwise, the effective date shall be the date of receipt of the appellant's claim or the date, on which entitlement arose, whichever is later. 38 C.F.R. § 3.400(b)(2)(i).

The Veteran separated from service on October 4, 2012. On January 17, 2013, less than one year after separation from service, the Veteran filed a claim for service connection for ankylosing spondylitis and for anxiety residuals from medication for sacroiliitis/ankylosing. Therefore, the Veteran would be entitled to an effective date of October 5, 2012, provided entitlement to service connection did not arise later than that date.

In a rating decision dated April 2013, service connection for ankylosing spondylitis was granted, effective October 5, 2012, the day after service separation. The April 2013 rating decision denied service connection for anxiety residuals. The Veteran filed a timely notice of disagreement and was issued a statement of the case in July 2013. An August 2014 rating decision granted service connection for adjustment disorder with mixed anxiety and depression (previously claimed as anxiety residuals associated with medication) as secondary to service-connected ankylosing spondylitis, effective July 24, 2014. This was the date a VA examination was done that provided a diagnosis of adjustment disorder. 

Service treatment records reflect that in November 2011 the Veteran was noted to have an adjustment disorder with depressed mood. A February 2012 record notes the Veteran was diagnosed with adjustment disorder with depressed mood. An April 2012 record notes the Veteran's history dated back to October or November 2010, at which time she developed pain in her back and feet. Regardless of the fact the VA examination done in 2013 did not provide a diagnosis, the condition was shown in service. For these reasons, the Veteran is entitled to an effective date of October 5, 2012, the day following separation from active military service, for her service-connected adjustment disorder. 38 U.S.C.A. § 5110 (b)(1); 38 C.F.R. § 3.400 (b)(2)(i).


ORDER

Entitlement to an initial disability rating in excess of 10 percent for ankylosing spondylitis with sacroiliitis and bilateral L5 spondylolysis is denied. 

Entitlement to a temporary total evaluation because of treatment for a service-connected condition requiring convalescence is denied. 

An effective date of October 5, 2012, for the grant of service connection for an adjustment disorder with mixed anxiety and depression is granted.


REMAND

The Veteran argues that her service-connected autoimmune condition is more analogous to rheumatoid arthritis or chronic fatigue syndrome in its effects. She is in receipt of a 10 percent rating under 38 C.F.R. § 4.88b, Diagnostic Code 6399-6350. The diagnosed autoimmune condition associated with her ankylosing spondylitis is not specifically listed in the Rating Schedule. When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the diagnostic code number will be "built-up" by using the first two digits of the diagnostic code for the most closely analogous disability, followed by the terminal digits "99" connoting an unlisted condition. See 38 C.F.R. § 4.27. Diagnostic Code 6399 refers to an unlisted infectious disease and Diagnostic Code 6350 pertains to systemic lupus erythematosus (disseminated). 

Based on the Veteran's complaints and medical evidence of record, the Board finds the symptoms and disease process of her autoimmune condition is similar to that of rheumatoid arthritis, which is rated under Diagnostic Code 5002. Indeed, the Veteran reports exacerbations of pain, stiffness, and inflammation. Also, the medical evidence of record notes the Veteran receives Enbrel injections on a weekly basis. Enbrel is used to treat certain types of arthritis such as rheumatoid arthritis and ankylosing spondylitis. The medication further treats, but does not cure autoimmune diseases and can stop the progression of disease and joint damage and decrease swelling and stiffness of joints in arthritis. See http://www.webmd.com/drugs/2/drug-16772-299/enbrel-syringe/details. The Board finds the Veteran's autoimmune condition should be considered under Diagnostic Code 5002 for rheumatoid arthritis. 

The evidence of record reveals that during her July 2014 VA examination, she reported that once a month for two to three days she was bedridden because of her pain with increased activity. Her average frequency of exacerbations per year was found to be more than three. In a subsequent July 2014 VA addendum opinion, the examiner clarified that the Veteran's reported incapacitating episodes were best described as manifestations of the fatigue and pain noted as symptoms of her autoimmune disease. A February 2015 private treatment record notes the Veteran had exacerbations that occurred three or more times a year. She last underwent a VA examination in May 2015, in which she reported she was able to do all activities of daily living/routine activities without incapacity, although she would experience fatigue and pain with overexertion. She felt exhausted and had an overall decrease in activity levels compared to prior to 2013. The examiner noted that the Veteran did not describe fatigue of an incapacitating nature and she was currently on medication that reduced the progression and helped control her symptoms; however, her ankylosing spondylitis was an active and ongoing chronic progress. This VA examination did not indicate the average frequency of her exacerbations per year. Additionally, during her April 2015 Board hearing, the Veteran stated she was recently diagnosed with anemia, which was confirmed in her VA treatment records. The Board notes that spondylitis causes inflammation and when inflammation is present, the body must counteract it. The release of cytokines during the process of inflammation can produce a sensation of fatigue, as well as mild to moderate anemia, which may also contribute to a feeling of tiredness. See Spondylitis Association of American, http://www.spondylitis.org/Fatigue. 

Based on this evidence, it is unclear how often the Veteran has incapacitating exacerbations and the effect her medication has on reducing/controlling them. Also, she has now developed anemia, which could be considered under Diagnostic Code 5002. Thus, the Board finds a new VA examination is necessary to assess the current nature, extent and severity of the Veteran's autoimmune condition. 

The Veteran also claims her service connected adjustment disorder with mixed anxiety and depression is more severe than the current rating reflects. She avers in a June 2015 VA treatment record that she found a non-VA psychiatrist that was successful. However, there is no indication such records have been associated with the claims file. Thus, the RO should attempt to associate these records with the claims file. The Board will also order a new VA psychiatric examination, to ensure the record is complete when it returns for further adjudication.

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to complete release forms so the RO can request her records from the non-VA psychiatrist. If such records are unavailable, the RO should ensure all procedures are followed and a memorandum detailing the efforts made should be prepared for the file.

2. Also, attempt to obtain and associate with the claims file VA treatment records from the Connecticut VA Healthcare System since July 2015. 

3. Schedule the Veteran for a VA examination in order to determine the current severity of her service-connected adjustment disorder.

4. Then, schedule the Veteran for a VA examination in order to determine the current severity of her service-connected autoimmune condition. The examiner is requested to complete the VA examination on a template for rheumatoid arthritis and to take into consideration the Veteran's diagnosed anemia and whether or not the Veteran has experienced any weight loss. 

5. Then readjudicate the appeals. The RO should consider whether the autoimmune condition would be better evaluated under Diagnostic Code 5002. If any benefit sought remains denied, the Veteran and her representative should be issued a supplemental statement of the case (SSOC). An appropriate period of time should be allowed for response before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
MICHELLE L .KANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs