﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 190305-5378
DATE: July 30, 2019

ORDER

Entitlement to a disability rating of 10 percent, but no higher, for essential hand tremors is granted.

Entitlement to a disability rating in excess of 10 percent for traumatic brain injury (TBI) residuals is denied.

FINDINGS OF FACT

1. During the period on appeal, the Veteran’s bilateral essential hand tremors have manifested in impairment analogous to, at worst, a moderate convulsive tic.

2. Throughout the appeal period, the Veteran’s TBI residuals have been manifested by no more than level “1” impairment in any of the facets of cognitive impairment and other residuals of TBI not otherwise classified.

CONCLUSIONS OF LAW

1. The criteria for a disability rating of 10 percent, but no higher, for essential tremors of the hands have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.124a, Diagnostic Code 8103 (2018).

2. The criteria for a rating in excess of 10 percent for TBI residuals have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.124a, Diagnostic Code 8045 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in July 2018. In March 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran served on active duty from September 1960 to March 1964 and from May 1976 to July 1981. The Veteran opted in to the Appeals Modernization Act (AMA) review system by submitting a March 2019 Decision Review Request wherein he requested directed review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

I. Entitlement to a Compensable Disability Rating for Essential Hand Tremors from April 3, 2018 to March 5, 2019

The Veteran contends that he should be assigned a higher rating for his essential hand tremors. The AOJ found that the Veteran’s essential tremors had no compensable symptoms and assigned a noncompensable rating under Diagnostic Code 8199-8103.

There is no specific diagnostic code for essential tremors, and it is rated by analogy under 38 C.F.R. § 4.124a, Code 8103 (for convulsive tic). A note following Diagnostic Code 8103 states that the disability is to be rated depending on the frequency, severity, and muscle groups involved. A noncompensable rating is assigned when mild; a 10 percent rating is assigned when moderate; and a maximum schedular 30 percent rating is assigned when severe.

Words such as “mild,” “moderate,” “moderately severe,” and “severe” are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. Use of terminology such as “severe” by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

The Board finds that a 10 percent rating under Code 8103 is warranted for the Veteran’s essential hand tremors. 

During an April 2018 VA examination, the Veteran reported a tremor in his hands, right more than left, which interfered with activities such as signing checks, administering insulin, and eating food. The examiner indicated that the Veteran’s essential tremors required continuous medication for control. On neurologic examination, the Veteran had full (5/5) muscle strength and normal (2+) reflexes of the bilateral upper extremities. There was no evidence of muscle atrophy or weakness. The examiner noted functional impacts due to the Veteran’s essential tremors in that the Veteran “would have difficulty with many aspects of work due to tremor given impact on fine motor tasks, typing, writing, etc.”

An August 2018 VA neurology consultation note shows that the Veteran had slight to mild tremors. Coordination was noted to be finger to nose without dysmetria or ataxia. It was noted that the Veteran’s essential hand tremors occurred at rest and caused “significant difficulty holding items.” 

Based on a review of the foregoing evidence of record and resolving the benefit of the doubt in the Veteran’s favor, the Board finds that the Veteran’s essential hand tremors disability more nearly approximates the symptomatology associated with an initial, 10 percent disability rating under Diagnostic Code 8103. Based on the Veteran’s consistent statements that his condition impacts his activities of daily living, specifically those requiring fine motor skills, as well as the Veteran’s use of daily medication to treat his tremors, the Board finds that this most closely approximates the criteria for moderate tremors. 

However, the Board finds that a maximum 30 percent rating under Diagnostic Code 8103 is not warranted at any time of the appeal period. In this regard, the Veteran’s physical examinations have showed normal muscle strength and reflexes and no more the than mild tremors. Accordingly, the Veteran’s essential hand tremor disability does not approximate the criteria for a higher rating of severe convulsive tic. 

The Board has considered the applicability of other, potentially applicable diagnostic criteria for rating the Veteran’s essential hand tremors but finds that the Veteran’s essential hand tremors are most adequately evaluated under the provisions of Diagnostic Code 8103.

The Board concludes that the objective medical evidence and the Veteran’s statements regarding his symptomatology show disability that most nearly approximates that which warrants the assignment of a 10 percent disability rating for the entire appeal period. See 38 C.F.R. § 4.7. As shown above, and as required by Schafrath, the Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the Veteran. The Board finds no provision upon which to assign a greater or separate rating.

II. Entitlement to a Disability Rating in Excess of 10 Percent for TBI Residuals from April 3, 2018 to March 5, 2019

The Veteran contends that he should be assigned a higher rating for his TBI residuals. The AOJ found that the Veteran’s TBI residuals had a level of severity of “1” for the Memory, Attention, Concentration, and Executive Functions facet and the Judgment Facet and a level of severity of “0” for all other facets, and it assigned a 10 percent rating under Diagnostic Code 8045.

The Veteran’s TBI disability is evaluated under Diagnostic Code 8045, which states that there are three main areas of dysfunction that may result from TBI and have profound effects on functioning: cognitive (which is common in varying degrees after a traumatic brain injury), emotional/behavioral, and physical. 38 C.F.R. § 4.124a, Diagnostic Code 8045. Each of these areas of dysfunction may require evaluation. 

Cognitive impairment is defined as decreased memory, concentration, attention, and executive functions of the brain. Executive functions are goal setting, speed of information processing, planning, organizing, prioritizing, self-monitoring, problem solving, judgment, decision making, spontaneity, and flexibility in changing actions when they are not productive. Not all of these brain functions may be affected in a given individual with cognitive impairment, and some functions may be affected more severely than others. In a given individual, symptoms may fluctuate in severity from day to day. Cognitive impairment is evaluated under the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified.” Id. 

Subjective symptoms may be the only residual of TBI or may be associated with cognitive impairment or other areas of dysfunction. Subjective symptoms that are residuals of TBI, whether or not they are part of cognitive impairment, are evaluated under the subjective symptoms facet in the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified.” However, any residual with a distinct diagnosis that may be evaluated under another diagnostic code, such as migraine headache or Meniere’s disease, is to be separately evaluated, even if that diagnosis is based on subjective symptoms, rather than under the “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” table. Id. 

Emotional/behavioral dysfunction is evaluated under 38 C.F.R. § 4.130 when there is a diagnosis of a mental disorder. When there is no diagnosis of a mental disorder, emotional/behavioral symptoms are evaluated under the criteria in the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified.” 

Physical (including neurological) dysfunction is evaluated based on the following list, under an appropriate diagnostic code: Motor and sensory dysfunction, including pain, of the extremities and face; visual impairment; hearing loss and tinnitus; loss of sense of smell and taste; seizures; gait, coordination, and balance problems; speech and other communication difficulties, including aphasia and related disorders, and dysarthria; neurogenic bladder; neurogenic bowel; cranial nerve dysfunctions; autonomic nerve dysfunctions; and endocrine dysfunctions. Id. 

The preceding list of types of physical dysfunction does not encompass all possible residuals of TBI; residuals not listed in DC 8045 that are reported on an examination are to be evaluated under the most appropriate diagnostic code, with each condition rated separately, as long as the same signs and symptoms are not used to support more than one evaluation and combined under 38 C.F.R. § 4.25. The evaluation assigned based on the “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” table will be considered the evaluation for a single condition for purposes of combining with other disability evaluations. Id. 

An additional consideration is the potential need for special monthly compensation for such problems as loss of use of an extremity, certain sensory impairments, erectile dysfunction, the need for aid and attendance (including for protection from hazards or dangers incident to the daily environment due to cognitive impairment), being housebound, etc. Id. 

The table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” contains 10 important facets of TBI related to cognitive impairment and subjective symptoms. It provides criteria for levels of impairment for each facet, as appropriate, ranging from 0 to 3, and level 5, the highest level of impairment, labeled total. However, not every facet has every level of severity. The Consciousness facet, for example, does not provide for an impairment level other than total, since any level of impaired consciousness would be totally disabling. Assign a 100 percent rating if total is the level of evaluation for one or more facets. If no facet is evaluated as total, assign the overall percentage rating based on the level of the highest facet as follows: 0 = 0 percent; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent. For example, assign a 70 percent rating if 3 is the highest level of evaluation for any facet. Id. 

The current version of Diagnostic Code 8045 contains the following notes:

Note (1): There may be an overlap of manifestations of conditions evaluated under the table titled “Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified” with manifestations of a comorbid mental, neurologic, or other physical disorder that can be separately evaluated under another diagnostic code. In such cases, do not assign more than one rating based on the same manifestations. If the manifestations of two or more conditions cannot be clearly separated, assign a single rating under whichever set of diagnostic criteria allows the better assessment of overall impaired functioning due to both conditions. However, if the manifestations are clearly separable, assign a separate rating for each condition. 

Note (2): Symptoms listed as examples at certain evaluation levels in the table are only examples and are not symptoms that must be present in order to assign a particular evaluation. 

Note (3): Instrumental activities of daily living refers to activities other than self-care that are needed for independent living, such as meal preparation, doing housework and other chores, shopping, traveling, doing laundry, being responsible for one’s own medications, and using a telephone. Those activities are distinguished from activities of daily living, which refers to basic self-care and includes bathing or showering, dressing, eating, getting in or out of bed or a chair, and using the toilet. 

Note (4): The terms mild, moderate, and severe TBI, which may appear in medical records, refer to a classification of TBI made at, or close to, the time of injury rather than to the current level of functioning. That classification does not affect the rating assigned under diagnostic code 8045.

Turning to the merits of the claim, the Veteran was afforded a VA examination in April 2018. He reported that he fell off a boat in the 1960s when he was in the Navy and lost consciousness for about an hour. He also reported that he was hit in the hit with a baseball bat and lost consciousness in the 1980s when he was in the Army. He reported current symptoms of: difficulty with memory; occasional dizziness; and one headache per month. He also reported “sharp pains on his head usually 2 times a day, on the right side, from the ear to the eye.” The examiner indicated that “[t]hese noted mild head pains and headaches are not thought to be due TBI/posttraumatic as they are too far out to be explained by mild-moderate TBI.” 

The examiner noted a complaint of mild memory impairment in that the Veteran “forgets items in his house, forgets what he was going to do, etc.” The examiner noted mildly impaired judgment in that the Veteran “seeks input from family/friends on more important decisions.” The examiner noted routinely appropriate social interaction, normal orientation, normal motor activity, normal visual spatial orientation, no subjective symptoms, no neurobehavioral effects, no communication deficits, and normal consciousness. The Veteran scored a 28/30 on a Mini-Mental State Examination (MMSE), and the examiner noted no diagnoses of anxiety, depression, or PTSD. 

A review of the Veteran’s VA treatment records does not show that the Veteran has symptoms of his TBI that are worse than those reported at his VA examination. In fact, VA treatment records show that the Veteran lives alone and has “lots of friends, healthy social life, happy.” See, e.g., August 2018 VA Neurology Consult Report. 

The evaluation assigned for cognitive impairment and other residuals of traumatic brain injury not otherwise classified is based upon the highest level of impairment for any facet as determined by examination. Only one disability evaluation is assigned for all the applicable facets. In this case, the overall evidence warrants a 10 percent evaluation based upon the evidence of record. Specifically, the highest level of impairment of any facet in this case is a level “1.” 

Regarding the memory, attention, concentration, and executive functions facet, the Veteran was assigned a level of impairment of “1” based on his reports of mild loss of memory. In order to warrant a higher level of impairment of “2”, the evidence would have to show objective evidence on testing of mild impairment of memory, attention, concentration, or executive functions. Here, as noted above, the Veteran scored a 28/30 on the MMSE. Moreover, during an August 2018 VA neurology consultation, the Veteran had normal attention and recall of recent events. 

Regarding the judgment facet, the Veteran was assigned a level of impairment of “1” based on his reports of mildly impaired judgment. In order to warrant a higher level of impairment of “2”, the evidence would have to show moderately impaired judgment, which is not shown by the evidence in this case. 

For the facet social interaction, a “0” level of impairment is appropriate for the entire appeal period. The April 2018 VA examination documented that the Veteran’s social interaction was appropriate, and there is no other evidence that the Veteran’s social interaction was inappropriate. As noted, VA treatment records reflect that the Veteran has “lots of friends” and a “health social life.” 

For the facet orientation, a “0” level of impairment is appropriate for the entire appeal period. Treatment records and VA examination reports found that the Veteran was regularly oriented in all four aspects. There is no clinical evidence of record showing impaired orientation. 

For the facet motor activity, a “0” level of impairment is appropriate for the entire appeal period. The April 2018 VA examiner noted normal motor activity, and this is supported by the evidence of record. The Board notes the Veteran’s argument that he should be assigned a higher level of impairment in this area due to his essential hand tremors. See March 2019 Statement in Support of Claim. However, in this case, the evidence shows that the onset of the Veteran’s essential hand tremors, which were noted to be pre-existing service, predate his TBIs, and the April 2018 VA examiner specifically indicated that the Veteran’s hand tremors were not due to TBI. Accordingly, a “0” level of impairment is warranted.

For the facet visual spatial orientation, a “0” level of impairment is appropriate for the entire appeal period as there is no clinical evidence of record reflecting any deficiency in this area. 

For the facet subjective symptoms, a “0” level of impairment is appropriate. The only subjective symptoms reported by the Veteran is mild headaches, which the April 2018 VA examiner specifically found to be unrelated to the Veteran’s TBI. 

For the facet neurobehavioral effects, a “0” level of impairment is appropriate. The April 2018 VA examiner noted no neurobehavioral effects and no diagnoses related to acquired psychiatric disorders, and these findings are supported by VA treatment records. 

For the facet communication, a “0” level of impairment is appropriate. The April 2018 examiner found that the Veteran was able to communicate by spoken and written language and to comprehend spoken and written language. The Veteran demonstrated no impairments in this area on any of the other examinations of record and there is no clinical evidence showing impaired communication. 

For the facet consciousness, a “0” level of impairment is assigned because the Veteran demonstrates no impairment in this area and there is no clinical evidence of record showing impaired consciousness. 

Thus, the Veteran’s highest level of impairment in any facet is a “1.” Accordingly, a rating in excess of 10 percent is not warranted.

The Veteran is competent to describe the symptoms related to his residuals of a TBI. Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, he is not competent to address complex medical issues, such as identifying a specific level of disability according to the appropriate Diagnostic Code. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Thus, while credible in his belief that a higher rating is warranted, the Veteran’s contentions regarding the appropriate rating are outweighed by the competent medical evidence that evaluates the true extent of his disability. 

The Board has considered whether any other potentially relevant Diagnostic Codes would yield higher ratings for the Veteran’s TBI residuals. However, when a condition is specifically listed in the Rating Schedule, it may not be rated by analogy. See Copeland v. McDonald, 27 Vet. App. 333, 338 (2015) (pes planus is specifically rated under Diagnostic Code 5276; hence an analogous rating under Diagnostic Code 5284 was not permitted). Thus, Diagnostic Code 8045 is the most appropriate in light of the TBI diagnosis and symptoms.

The Board finds that, throughout the appeal period, the disability picture associated with the Veteran’s TBI residuals most nearly approximated the criteria for a rating of 10 percent, but no higher. As a preponderance of the evidence is against the award of a rating in excess of 10 percent, the benefit of the doubt doctrine is not applicable. See 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

DEBORAH W. SINGLETON

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD R. Kipper, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.