# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-0929

ULYSSES COPELAND, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 25, 2015)

*Robert V. Chisholm*, *Judy J. Donegan*, and *Michael S. Just*, all of Providence, Rhode Island, were on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Kenneth A. Walsh*, Deputy Assistant General Counsel, and *Jonathan G. Scruggs*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, SCHOELEN, and GREENBERG, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

LANCE, *Judge*: The appellant, veteran Ulysses Copeland, appeals through counsel a February 26, 2014, decision of the Board of Veterans' Appeals (Board) that, in part, denied entitlement to a disability rating greater than 50% for bilateral pes planus with hallux valgus.[1] Record (R.) at 2-18. On April 14, 2015, this case was submitted to a panel for review, and on April 27, 2015, the Court ordered the parties to file supplemental memoranda of law. The parties filed

---

[1] The Board also granted entitlement to a 50% disability rating for Mr. Copeland's bilateral pes planus with hallux valgus for the period prior to October 30, 2013. The Court cannot disturb this favorable finding. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). In addition, the Board remanded the issue of entitlement to a total disability rating based upon individual unemployability, and the Court lacks jurisdiction over that matter. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000).

their supplemental memoranda on May 11, 2015. For the reasons that follow, the Court will affirm the Board's decision.

## I. BACKGROUND

Mr. Copeland served in the U.S. Army from January 23, 1951, to December 29, 1952. R. at 308. In March 1964, he submitted a claim for entitlement to service connection for pes planus, which the Board granted in a June 10, 1966, decision. R. at 1610-14. A June 29, 1966, VA regional office (RO) decision assigned an initial 10% disability rating. R. at 1609. Since that time, Mr. Copeland has submitted several claims for increased disability ratings, most recently in April 2008. R. at 884-85. The RO issued a decision in September 2008 granting a 30% disability rating, effective April 8, 2008. R. at 821-26. Mr. Copeland filed a Notice of Disagreement in October 2008, R. at 802-03, and perfected his appeal to the Board in May 2009, R. at 707.

In October 2010, Mr. Copeland underwent a QTC contract medical examination. R. at 584-86. The examiner, Dr. James Collier, discussed Mr. Copeland's symptoms, including pain in both feet, weakness, stiffness, swelling, fatigue, abnormal weight bearing, and callosities with tenderness. R. at 585. Dr. Collier noted that Mr. Copeland's range of motion was normal. R. at 586. He diagnosed Mr. Copeland with bilateral pes planus, "not due to injury or trauma," as well as hallux valgus "as a result of a progression of the previous diagnosis." R. at 584-85. Relying on the October 2010 examination, the RO issued a decision on December 17, 2013, that granted entitlement to a 50% disability rating for pes planus, effective October 30, 2013. R. at 187-92.

On February 26, 2014, following additional development, the Board issued the decision now on appeal. R. at 2-18. In it, the Board found that a 50% disability rating was warranted for the period from April 8, 2008, to October 30, 2013. R. at 10. The Board determined, however, that a disability rating greater than 50% was not appropriate at any time since April 8, 2008. R. at 10-11. In making this determination, the Board considered whether increased ratings were warranted under various diagnostic codes (DCs), including DC 5276, for acquired flatfoot, DC 5278, for claw foot, DC 5280, for hallux valgus, and DC 5284, for "foot injuries, other." R. at 9-10; *see* 38 C.F.R. § 4.71a, DCs 5276, 5278, 5280, and 5284 (2014). Although the Board noted that DC 5280 was potentially applicable in light of Mr. Copeland's diagnosis of hallux valgus, it determined that his hallux valgus was only "slight to moderate without surgical resection," and so a separate disability

2

rating was not warranted.[2]  R. at 10.  The Board also determined that DC 5284 was potentially applicable but that neither a higher evaluation nor a separate evaluation were warranted under that code.  *Id.*  Finally, the Board found that referral for extraschedular consideration was not warranted. R. at 11-12.  Accordingly, the Board denied Mr. Copeland's claim.  R. at 12.  This appeal followed.

## II.  THE PARTIES' ARGUMENTS

Mr. Copeland contends that the Board erred when it failed to grant him separate 30% disability ratings under DC 5284 for his foot disabilities.  Appellant's Brief (Br.) at 4-7.  In particular, he contends that the Board's selection of DC 5276 over DC 5284 was "inconsistent with the law and patently fallacious," as "his service-connected disabilities are not all contemplated under a single DC."  *Id.* at 4, 6.  He also contends that the Board failed to adequately explain why, although he is entitled to a "pronounced" rating under DC 5276, he is not entitled to a "severe" rating under DC 5284, "a lesser degree of severity."  *Id.* at 5.  Finally, in his supplemental memorandum of law, Mr. Copeland argues that rating his pes planus and hallux valgus under DC 5284 is not rating by analogy, as "both DC 5276 and DC 5284 are potentially appropriate diagnostic codes," and that DC 5284, though facially limited to "foot injuries, other," is applicable to all foot conditions as a "catch-all."  Appellant's Supplemental (Supp.) Memorandum (Mem.) at 1-4.  He asks the Court to remand the Board's decision.

The Secretary responds that the appellant's pes planus and hallux valgus may not be rated under DC 5284, as there are DCs that specifically address those conditions.  He argues, accordingly, that rating them under any other code, including DC 5284, would constitute rating by analogy, which is not permitted when there is "a DC that is specifically labeled with the name of a particular condition."  Secretary's Supp. Mem. at 3-5.  He also argues that the Board's selection of DC 5276 was not improper.  Secretary's Br. at 7-12.  He asks the Court to affirm the Board's decision.

---

[2]A 10% disability rating for unilateral hallux valgus requires an operation with resection of the metatarsal head or severity equivalent to amputation of the great toe.  38 C.F.R. § 4.71a, DC 5280.

3

# III. ANALYSIS

As a threshold question, the Court must consider whether the appellant's diagnosed conditions—pes planus and hallux valgus—may be rated under DCs other than the specific DCs for those conditions, namely DC 5276 for pes planus and DC 5280 for hallux valgus. For the reasons that follow, the Court holds that they may not.

Service-connected disabilities are evaluated using the criteria set forth in VA's schedule for rating disabilities (Schedule), which is codified in part 4 of title 38 of the Code of Federal Regulations. *See Buczynski v. Shinseki*, 24 Vet.App. 221, 223 (2011); 38 C.F.R. part 4. Once VA grants service connection for a disability, it must select a diagnostic code from the Schedule "for the purpose of showing the basis of the evaluation assigned," and "[g]reat care will be exercised in the selection of the applicable code number and in its citation on the rating sheet." 38 C.F.R. § 4.27 (2014).

For conditions that are not specifically listed in the Schedule, VA regulations provide that those conditions may be rated by analogy under the DC for "a closely related disease or injury." 38 C.F.R. § 4.20 (2014); *see* 38 C.F.R. § 4.27 ("When an *unlisted* disease, injury, or residual condition is encountered, requiring rating by analogy, . . . ." (emphasis added)). Where, however, a condition *is* listed in the schedule, rating by analogy is not appropriate. In other words, "[a]n analogous rating . . . may be assigned *only* where the service-connected condition is 'unlisted.'" *Suttmann v. Brown*, 5 Vet.App. 127, 134 (1993) (emphasis added).[3] Instead, a listed condition should be rated under the DC that specifically pertains to it.

Since this Court's decision in *Suttmann*, it has issued several decisions that appear to suggest the possibility of rating listed conditions by analogy. For example, in *Stephens v. Principi*, the Court held that the Board's selection of a DC "specifically labeled with the name of the veteran's diagnosed, service-connected condition . . . was not arbitrary or capricious, not an abuse of discretion, and was in accordance with law." 16 Vet.App. 191, 194 (2002) (per curiam order). Similarly, in *Tropf v. Nicholson*, the Court noted in dicta that the Secretary's practice of using hyphenated ratings pursuant to § 4.27 was "a tool that explains how . . . diseases are being rated

---

[3] The Court notes that neither party cited *Suttmann* in their briefs and that Mr. Copeland did not address it in his supplemental memorandum of law.

when the explicit diagnostic code for the condition is inadequate." 20 Vet.App. 317, 321 n.1 (2006). Nothing in these decisions contradicts the Court's holding in *Suttmann*, however, and that case remains good law. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (panel decisions constitute binding precedent unless overturned by, inter alia, the en banc Court or the U.S. Court of Appeals for the Federal Circuit).

Therefore, the Court reiterates that when a condition is specifically listed in the Schedule, it may not be rated by analogy. The fact that the appellant has been diagnosed with two separate conditions does not change this analysis; rather, VA must—as it did here—apply the DCs that specifically pertain to the listed conditions and determine the appropriate disability ratings. Both pes planus and hallux valgus are listed in the Schedule, and the Board properly considered whether increased evaluations were warranted under both DC 5276 and DC 5280. R. at 9-11.

Nonetheless, Mr. Copeland baldly argues that rating his condition "under DC 5284 would not be rating 'by analogy,'" Appellant's Supp. Mem. at 2. This assertion is belied by a plain reading of that DC.[4] *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 4090 (1993) ("The starting point in interpreting a statute [or regulation] is its language."); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) ("The canons of construction of course apply equally to any legal text and not merely to statutes."). DC 5284 is labeled "Foot injuries, other." 38 C.F.R. § 4.71a, DC 5284. As our dissenting colleague astutely notes,"the word 'other' is not superfluous." *Post* at 7; *see Moskal v. United States*, 498 U.S. 103, 109 (1990) (noting "the established principle that a court should 'give effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955))). Rather, it must be read in the context of DC 5284's position as one of nine DCs that pertain to musculoskeletal disabilities of the foot. *See* 38 C.F.R. § 4.71a, DCs 5276-5284 (2014). To hold that DC 5284 applies to the other eight listed foot conditions would essentially render those DCs redundant. "The Court simply cannot accept a construction that would render . . . entire DC[s] superfluous in this manner." *Prokarym v. McDonald*, __ Vet.App. __, __;

---

[4] Our dissenting colleague asserts that the "suggestion that a disability listed in the rating schedule can only be rated under its listed DC when other provisions exist[] comes dangerously close to the Court reviewing the schedule of ratings for disabilities." *Post* at 8. His analysis, however, begs the question of whether DC 5284 does, in fact, apply to the appellant's conditions, and it mischaracterizes the Court's review in this case. Rather than engaging in a prohibited review of the Schedule or the Secretary's actions in adopting it, *see* 38 U.S.C. § 7252(b), the Court's opinion instead "involve[s] 'an interpretation of language in the regulations' related to the [S]chedule," *Wingard v. McDonald*, 779 F.3d 1354, 1357 (Fed. Cir. 2015).

2015 WL 1640719, at *4 (Apr. 14, 2015). The Court therefore holds that, as a matter of law, DC 5284 does not apply to the eight foot conditions specifically listed in § 4.71a, and so rating Mr. Copeland's listed conditions under that DC would constitute an impermissible rating by analogy. *See Suttmann*, 5 Vet.App. at 134; *cf.* 38 C.F.R. §§ 4.20, 4.27.

Mr. Copeland also contends that he should be rated under DC 5284, as "his service-connected disabilities are not all contemplated under a single DC." Appellant's Br. at 4. This argument, however, overlooks the fact that there are already safeguards in place to compensate a veteran both for symptoms outside the rating criteria for a particular condition and for the combined effects of multiple service-connected disabilities. First, if the same injury results in separate and distinct manifestations, "then the appropriate course of action is to recognize each of them and then combine the two separate ratings." *Tropf*, 20 Vet.App. at 321 (citing *Esteban v. Brown*, 6 Vet.App. 259, 261 (1994)). Similarly, "[i]f a service-connected disability causes another disability to occur, the appropriate course is to grant secondary service connection and, again, rate the disabilities separately." *Id.* (citing *Libertine v. Brown,* 9 Vet.App. 521, 522 (1996)). Finally, where "a veteran's overall disability picture establishes something less than total unemployability, but where the collective impact of a veteran's disabilities are nonetheless inadequately represented," referral for extraschedular consideration is the appropriate course of action.[5] *Johnson v. McDonald*, 762 F.3d 1362, 1366 (Fed. Cir. 2014).

In other words, the Secretary has, through various regulations, created procedural mechanisms to account for all symptoms and effects arising from service-connected conditions. Mr. Copeland's attempt to circumvent this statutory and regulatory framework amounts to little more than a disagreement with how the Secretary has chosen to rate pes planus and hallux valgus under the Schedule, which is beyond the Court's authority to review. *See* 38 U.S.C. § 7252(b) ("The Court may not review the schedule of ratings for disabilities . . . or any action of the Secretary in adopting or revising that schedule."); *see also Wingard*, 779 F.3d at 1356–57 (discussing this Court's inability to review the schedule of ratings for disabilities).

---

[5] The Court notes that Mr. Copeland does not challenge the Board's determination that referral for extraschedular consideration was not warranted in this case. R. at 11-12; *see Cromer v. Nicholson*, 19 Vet.App. 215, 217 (2005) ("[I]ssues not raised on appeal are considered abandoned.").

Although the Board considered whether an increased evaluation was warranted under DC 5284, its attempt to rate Mr. Copeland's listed conditions under that DC was error as a matter of law. *See Suttmann*, 5 Vet.App. at 134. This error was harmless, however, as the Board ultimately rated Mr. Copeland under the listed DCs, determining that he was entitled to a 50% disability rating under DC 5276 and that he was not entitled to a compensable evaluation under DC 5280. R. at 9-11; *see* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). The appellant does not argue that the Board erred when it determined the appropriate disability ratings under DC 5276 and 5280, nor can the Court discern any deficiency in this analysis.

The Court will, therefore, affirm the Board's decision. In light of this outcome, the Court will not address the appellant's remaining arguments. Although the Court may one day be called to resolve those matters in the context of an unlisted condition rated by analogy, they are not implicated in the instant decision.

## IV. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Board's February 26, 2014, decision is AFFIRMED.

GREENBERG, *Judge*, dissenting: I dissent. Because I believe DC 5284 is directly applicable to the appellant's combined disability, which includes pes planus and hallux valgus, the majority cannot describe compensating the appellant under DC 5284 as "rating by analogy."

DC 5284 is labeled "Foot injuries, other." While one reading of this DC appears to limit compensation to a foot injury, the word "other" is not superfluous. The remainder of the diagnostic codes that pertain to the feet compensate foot conditions and not injuries. *See* 38 C.F.R. § 4.72, DC 5276-5283. When read naturally with the rest of the rating schedule, the term "injuries, other" clearly suggests that DC 5284 is a broader diagnostic code for feet. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.").

7

The majority holds that "there are already safeguards in place to compensate a veteran . . . for the combined effects of multiple service-connected disabilities." Ante at 6. But, *Tropf v Nicholson*, 20 Vet.App. 317 (2006), is cited for the proposition that when a *single* injury has multiple manifestations, the appropriate action is to recognize the disabilities separately and combine the rating. The appellant suffers from multiple service-connected conditions that, when working against each other create a combined disability that is different from either condition individually. To the extent that the majority suggests that referral for extraschedular consideration is appropriate here, I believe DC 5284 sufficiently contemplates the appellant's disability picture. *See Thun v. Peake*, 22 Vet.App. 111 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009). There is no need to require the appellant to satisfy the additional burden of establishing that his combined disability has caused such related factors as marked interference with employment or frequent periods of hospitalization where the rating schedule can adequately compensate the appellant. *See id.*

Moreover, VA has the duty to maximize benefits and merely compensating an appellant for all of the manifestations of his disability does not fully satisfy this obligation. *See AB v. Brown*, 6 Vet.App. 35, 38 (1993). VA must award the highest benefit allowed because this is what a veteran is presumed to be seeking. *Id.* Here that would be compensating the appellant under DC 5284. The appellant's unique factual circumstances illustrate the possibility of compensating the appellant under both the DCs that specifically address his conditions (DCs 5276 and 5280) and the broader DC 5284. Nothing in the rating schedule prevents a disability from being appropriately compensated under multiple diagnostic codes, and the majority's implicit suggestion that a disability listed in the rating schedule can only be rated under its listed DC, when other provisions exist, comes dangerously close to the Court reviewing the schedule of ratings for disabilities. We cannot, as a matter of law, question, but can only interpret, the secretary's adoption of DC 5284 as an alternative means to compensate a veteran. *See Wingard v. Mcdonald*, 779 F.3d 1354, 1356-57 (Fed. Cir. 2015).

This is not a rating by analogy case. Nowhere in the decision by the Board does the word analogy or its concept appear. *See* R. at 3-16. Rather, the Board was appropriately considering DC 5284 as applying directly to the appellant's condition and, but for a mathematical error by the Board,

8

the appellant would have received a higher rating under DC 5284 which would be a favorable finding protected by the Court. *See Medrano v. Nicholson,* 21 Vet.App. 165, 170 (2007).

The appellant, a veteran of the army of occupation in Germany, at advanced age is struggling to be appropriately compensated by reason of ambiguous language in a regulation. We should take care, in these situations, to resolve matters as fully as possible in favor of the veteran. Because I believe the majority has incorrectly applied this regulation to the facts found, I respectfully dissent.