Citation Nr: 1812667 
Decision Date: 02/28/18 Archive Date: 03/08/18

DOCKET NO. 13-08 791 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUES

1. Entitlement to higher staged initial evaluations for hypothyroidism, rated 10 percent prior to September 7, 2016, and 30 percent from September 7, 2016.

2. Entitlement to higher staged initial evaluations for umbilical hernia, rated noncompensable prior to June 20, 2013, and 20 percent from June 20, 2013.


REPRESENTATION

Veteran represented by: California Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

M. Espinoza, Associate Counsel


INTRODUCTION

The Veteran had active service from November 1995 to December 1997, from January 2003 to November 2004, and from June 2006 to June 2008.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in in Salt Lake City, Utah. Jurisdiction rests with the RO in San Diego, California. 

The July 2011 rating decision, in pertinent part, granted service connection for hypothyroidism and assigned an initial evaluation of 10 percent effective December 9, 2010, and granted service connection for umbilical hernia and assigned a noncompensable initial evaluation effective December 9, 2010. During the pendency of the appeal for a higher initial rating for umbilical hernia, a July 2013 rating decision, in part, granted a 20 percent staged initial evaluation, effective June 20, 2013. Similarly, a September 2017 rating decision, in part, granted a 30 percent staged initial evaluation, for hypothyroidism, effective September 7, 2016. Because these higher rating do not represent a grant of the maximum benefits allowable under the VA Schedule for Rating Disabilities, the Veteran's appeal as to these issues remains for Board consideration. AB v. Brown, 6 Vet. App. 35, 38 (1993).

In September 2016, the Veteran testified at a video conference hearing before the undersigned Veterans Law Judge. The hearing transcript is associated with the claims file. 

This case was initially before the Board in January 2017. In January 2017, the Board remanded the issues regarding the initial evaluations assigned for the Veteran's hypothyroidism and umbilical hernia for further development. The Board also remanded entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD). Thereafter, a May 2015 rating decision granted service connection for an acquired psychiatric condition, thus entitlement to service connection for an acquired psychiatric disorder is no longer before the Board. Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997). 

Also, in January 2017, the Board also remanded the issue of entitlement to a compensable initial evaluation for hypertension for issuance of a statement of the case pursuant to Manlincon v. West, 12 Vet. App. 238 (1999). In this regard, a May 2017 statement of the case was issued to the Veteran. The Veteran timely perfected an appeal thereafter and requested a Board video conference hearing, which has not yet been scheduled. Thus, this issue will be addressed in a subsequent Board decision, after the Veteran has been afforded the opportunity participate in her requested hearing, in accordance with the assigned docket number. Accordingly, the issues of higher initial evaluations for hypothyroidism and umbilical hernia are the issues addressed in this decision.

The United States Court of Appeals for Veterans Claims (Court) has held that a request for a total disability rating due to individual employability resulting from service-connected disability (TDIU), whether expressly raised by a veteran or reasonably raised by the record, is not a separate claim for benefits, but is rather part of the adjudication of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, although in September 2016 testimony, the Veteran reported her hypothyroidism had caused her to utilize sick leave, she did not assert that she was unemployable due to her service-connected disabilities at issue in this appeal.

Furthermore, the Board finds that it is not necessary to defer extraschedular consideration for service-connected disabilities at issue in this appeal, even though a September 2017 rating decision indicated the issue of entitlement to TDIU was deferred. See Brambley v. Principi, 17 Vet. App. 20 (2003). In Brambley, the determining factor for the extraschedular rating was marked interference with employment. In this case, the initial element of the analysis is not met as the Board finds that the schedular criteria are not inadequate for the service-connected disabilities at issue in this appeal; therefore, an analysis of whether there is marked interference with employment is not required. Thus, meaningful effect of Brambley does not apply.


FINDINGS OF FACT

1. For the period prior to September 7, 2016, the most probative evidence reflects the Veteran's hypothyroidism required continuous medication for control and manifested in fatigability, but was not manifested by constipation or mental sluggishness.

2. For the period from September 7, 2016, the most probative evidence reflects the Veteran's hypothyroidism requires continuous medication for control and manifests in fatigability and constipation, but is not manifested by muscular weakness, mental disturbance, or weight gain.

3. For the period prior to June 20, 2013, the most probative evidence reflects the Veteran's umbilical hernia was manifested by healed postoperative wounds, no disability, and a belt not indicated.

4. For the period from June 20, 2013, the most probative evidence reflects the Veteran's umbilical hernia was characterized as small, with at worst, an indication for a supporting belt, and well supported by truss or belt.


CONCLUSIONS OF LAW

1. For the period prior to September 7, 2016, the criteria for a rating in excess of 10 percent for hypothyroidism have not been met or more nearly approximated. 38 U.S.C. §§ 1155, 5107(b) (West 2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.119, Diagnostic Code 7903 (2017).

2. For the period from September 7, 2016, the criteria for a rating in excess of 30 percent for hypothyroidism have not been met or more nearly approximated. . 38 U.S.C. §§ 1155, 5107(b) (West 2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.119, Diagnostic Code 7903 (2017).

3. For the period prior to June 20, 2013, the criteria for a compensable rating for an umbilical hernia have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012), 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.114, Diagnostic Code 7339 (2017).

4. For the period from June 20, 2013, the criteria for a rating in excess of 20 percent for an umbilical hernia have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012), 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.114, Diagnostic Code 7339 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions, including pursuant to 38 C.F.R. § 3.103 (c)(2) (2017) and Bryant v. Shinseki, 23 Vet App 488 (2010). See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2017); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Additionally, the Board finds there has been substantial compliance with the January 2017 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998).

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155 (West 2012); 38 C.F.R. § 4.1 (2017). 

A. Initial Ratings for Hypothyroidism

The Veteran contends that higher staged initial ratings are warranted for her hypothyroidism. Service connection has been established for hypothyroidism effective from December 9, 2010. As such, the rating period for consideration on appeal is from December 9, 2010. As noted above, the service-connected hypothyroidism is currently rated 10 percent prior to September 7, 2016, and 30 percent from September 7, 2016, pursuant to 38 C.F.R. § 4.119, Diagnostic Code 7903.

Hypothyroidism is rated under Diagnostic Code 7903. 38 C.F.R. § 4.119 (2017); Copeland v McDonald, 27 Vet. App. 333 (2015). Under Diagnostic Code 7903, a 10 percent rating is assigned when hypothyroidism is manifested by fatigability, or continuous medication is required for control. A 30 percent rating requires fatigability, constipation, and mental sluggishness. A 60 percent rating requires muscular weakness, mental disturbance, and weight gain. A 100 percent rating requires cold intolerance, muscular weakness, cardiovascular involvement, mental disturbance (dementia, slowing of thought, depression), bradycardia (less than 60 beats per minute), and sleepiness. Id. 

In rating hypothyroidism, the Court has said that the all of the symptoms listed for a particular disability rating are not required to be demonstrated in order to establish entitlement to a higher disability rating. See Tatum v. Shinseki, 23 Vet. App. 152, 155 (2009). The Court noted that symptoms that meet some of the rating criteria should be considered in light of 38 C.F.R. § 4.7 (Where there is a question as to which of the two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating, otherwise, the lower rating will be assigned). The Court also acknowledged the difficulty in assessing the subjective reporting of symptoms by a claimant. In particular, the veteran in Tatum contended that she suffered from constipation. The Court recognized that the credibility of a person's assertion of such a personal affliction is a key consideration with regard to a finding that the person does or does not suffer from such affliction. The Court directed that the Board must discuss such contentions and the credibility of the claimant.

Keeping the foregoing in mind, following a review of the record, the Board finds that a rating higher than 10 percent is not warranted for the period prior to September 7, 2016, as the evidence does not show constipation or mental sluggishness attributable to hypothyroidism, and only reflects limited evidence of fatigability.

During a May 2011 fee based examination, the Veteran reported symptoms which included fatigability, sleepiness, depression, slowing of thought, difficulty breathing, intolerance of cold weather and weight gain. The May 2011 examiner also reported the Veteran did not describe any tremor, emotional instability, poor memory, or difficulty swallowing. Upon physical examination, the May 2011 examiner found, with respect to hypothyroidism, the subjective factor was tiredness, the objective factors were lab tests. The May 2011 examiner stated the thyroid condition did not result in any sequela. 

Thereafter, a June 2013 thyroid and parathyroid conditions disability benefit questionnaire found continuous medication was required for control of a thyroid or parathyroid condition. The June 2013 examiner found the Veteran reported fatigability, constipation, mental sluggishness, mental disturbance, muscular weakness, weight gain, sleepiness, cold intolerance and bradycardia. However, the June 2013 examiner found while the Veteran endorsed many of the above symptoms, such may be due to the hypothyroidism and/or to the depression/PTSD but it was difficult to ascertain. The June 2013 examiner noted the Veteran's thyroid-stimulating hormone (TSH) was markedly abnormal but her free thyroxine (T4) was normal, albeit just barely. The June 2013 examiner stated that it was likely that her hypothyroidism was the cause of only a minority portion of the above symptoms.

There are also copious treatment records throughout the increased rating period prior to September 7, 2016. They are largely consistent with the findings in the VA examinations during this appeal period and do not demonstrate additional symptoms associated with the service-connected hypothyroidism and applicable to the rating criteria that would warrant an initial rating in excess of 10 percent prior to September 7, 2016, despite the Veteran's report as to the presence of those symptoms. 

Specifically, with respect to constipation, as required by the higher rating criteria, July 2013 and January 2014 VA treatment records noted the Veteran's symptoms included constipation, and in a February 2016 VA treatment record, the Veteran endorsed intermittent constipation and/or diarrhea and stated that various foods gave her loose stools. However, in a May 2016 VA treatment record, the Veteran in part, complained of diarrhea rather than constipation. In this regard, the Board notes that diarrhea and constipation are opposite symptoms. Furthermore, in February 2011, June 2011, December 2011 September 2012, December 2012, August 2014, and November 2014 VA treatment records the Veteran, in part, affirmatively denied constipation. Moreover, a symptom constipation was not endorsed in the September 7, 2016 VA medical letter discussed below. Thus, record reflects a symptom of constipation was not consistently reported by the Veteran as a symptom of her hypothyroidism for the period prior to September 7, 2016. 

With respect to muscular weakness, also as required for a higher 30 percent evaluation, in a May 2011 VA treatment record, the Veteran reported feeling weak and had for some time; however, such was linked to low potassium rather than hypothyroidism. A July 2012 VA treatment record also noted, in part, the Veteran's exercise included tap dancing three times week, and the Veteran felt that such was a good outlet for extra energy and working off aggression, which indicates the opposite of fatigue. Additionally, with respect to the Veteran's neurological system, the Veteran, denied, in part, weakness and paresthesias in February 2011, June 2011, December 2011, March 2012, September 2012, and December 2012 VA treatment records. Similarly, August 2014 and November 2014 VA treatment records documented, with respect to the Veteran's neurological system, that she denied weakness. 

With respect to the Veteran's reported mental sluggishness and/or mental disturbance prior to September 7, 2016, as required for higher ratings, the Board notes that the Veteran has been service-connected for an acquired psychiatric condition, previously evaluated under PTSD, severe anxiety, and depressive disorders, with an evaluation of 30 percent assigned effective September 1, 2011 and an 50 percent evaluation assigned from February 29, 2016. In this case, the Veteran's mental sluggishness and/or mental disturbance has been attributed to her service-connected acquired psychiatric condition and the staged disability ratings for the service-connected acquired psychiatric condition already take into account any mental disturbance. 38 C.F.R. § 4.14 (2017); Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). Also, in this regard, from December 9, 2010 (the date service connection was granted for hypothyroidism) to September 1, 2011 (the effective date of the award of service connection for an acquired psychiatric condition), the evidence does not reveal that the Veteran had mental sluggishness or mental disturbance attributable to hypothyroidism. In this regard, a December 2009 VA treatment record noted Veteran had PTSD symptoms of flashbacks, avoidance of situations, numbness, but no depression. Thus, as described, such symptoms were linked to a diagnosis of PTSD rather than hypothyroidism.

In consideration of 38 C.F.R. § 4.14 and Esteban, the Board concludes that assigning a 30 percent rating based on mental sluggishness and/or mental disturbance, which are already compensated in the disability ratings assigned to the separately service-connected psychiatric disability, would constitute impermissible pyramiding. As such, the Board finds that a 30 percent rating based on the symptom of mental sluggishness is not warranted for any period prior to September 7, 2016.

However, the Veteran has also reported symptoms associated with even higher ratings. In this regard, with respect to weight gain, a January 2011 VA treatment record noted the Veteran had been dealing with several family issues, which impacted her weight loss progress, thus her weight was not linked to her hypothyroidism. Furthermore, October 2011 and December 2011 VA treatment records noted the Veteran's weight was stable. In February 2011, March 2012 December 2012 VA treatment records the Veteran denied a change in appetite or weight. Additionally, September 2011 and October 2011 VA treatment records documented the Veteran had lost 14.2 pounds and a May 2012 VA treatment record noted the Veteran had an unintentional weight loss of 35 pounds since August 2011, and a September 2012 VA treatment record document, in part, the Veteran lost 63 pounds. Conversely, July 2013 and January 2014 VA treatment record noted the Veteran's symptoms included weight gain. In a February 2016 VA treatment record the Veteran reported she had gained weight and had trouble losing it. However, the objective evidence reflects that the Veteran's weight was documented as 237 pounds in December 2010, the same month that service connection was originally granted, and was documented 226 pounds in a June 2016 VA treatment record. The Board finds that, given the relatively small difference in the Veteran's weight throughout the appeal period, the Veteran's hypothyroidism has not resulted in weight gain for the purposes of Diagnostic Code 7903.

With respect to cold intolerance, a January 2014 VA treatment record noted the Veteran's symptoms included cold intolerance. However, conversely, in a February 2016 VA treatment the Veteran, in part, denied, cold intolerance. Furthermore, a symptom cold intolerance was not mentioned in a July 2013 VA treatment record which listed the Veteran's symptoms, or in the September 7, 2016 VA medical letter discussed below. Thus, record reflects a symptom of cold intolerance was not consistently reported by the Veteran as a symptom of her hypothyroidism. 

Similarly, with respect to sleepiness, a March 2011 VA treatment record provided an impression of moderate obstructive sleep apnea and a July 2012 VA treatment record noted, in part, the Veteran alternated medication for sleeping with good effect but the Veteran reported she had not been taking sleep aids because she had been tired from work and tap dancing. Thus, record reflects a symptom of sleepiness was not consistently reported by the Veteran as a symptom of her hypothyroidism.

With respect to cardiovascular involvement and/or bradycardia, in a May 2011 VA treatment record the Veteran denied having any palpitations. Similarly, in February 2011, June 2011, December 2011, March 2012, September 2012, December 2012, August 2014, and November 2014 VA treatment records, the Veteran denied chest pain or palpitations. A July 2013 VA treatment record noted the Veteran reported occasional palpitations but such was not listed as part of a symptom of her hypothyroidism. In a February 2016 VA treatment record, the Veteran complained of intermittent palpitations; however, the same record found the Veteran's heart had a regular rate and rhythm. Additionally, bradycardia was reported in a March 2011 VA treatment record in conjunction with a diagnosis of sleep apnea. However, less than 60 beats per minute was not consistently found in VA treatment records and bradycardia was not endorsed as a diagnosis. Thus, record reflects symptoms of cardiovascular involvement and/or bradycardia were not consistently reported by the Veteran as a symptom of her hypothyroidism.

Furthermore, the Board reiterates the May 2011 examiner stated the Veteran's thyroid condition did not result in any sequela and the June 2013 examiner stated that it was likely that the Veteran's hypothyroidism was the cause of only a minority portion of the identified symptoms.

Thus, for these reasons, and absent probative evidence of constipation, muscle weakness, or associated mental sluggishness, or other symptoms related to even higher ratings attributable hypothyroidism, the Board finds that a 10 percent rating or even higher, or is not more nearly approximated for the period prior to September 7, 2016 at any point during the appeal period. Because the preponderance of the evidence is against an initial rating in excess of 10 percent for hypothyroidism prior to September 7, 2016, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3, Gilbert v. Derwinski, 1 Vet. App. 49, 58 (1990).

Next, for the period from September 7, 2016, the Board finds that a higher 60 percent rating is not warranted under Diagnostic Code 7903, as the evidence does not show muscular weakness or mental disturbance, and, further, shows problems with weight gain attributable to non-thyroid factors. 

The evidence during the relevant period includes a September 7, 2016 VA medical letter, which reported, in part, the Veteran's thyroid levels had been uncontrolled from too high to too low levels. The September 2016 VA medical letter noted the Veteran had experienced and continued to experience fatigue, skin, and hair changes, excessive dryness, weight gain, depression and such had worsened her PTSD symptoms.

Thereafter, a March 17, 2017 thyroid and parathyroid conditions disability benefit questionnaire found the Veteran's hypothyroidism required continuous medication and endorsed symptoms of fatigability, cardiovascular symptoms, constipation, weight gain, sleepiness, cold intolerance and oligomenorrhea. However, as discussed below, such symptoms were not consistently identified in the other clinical evidence of record. 

In this regard, ongoing treatment records dated after September 7, 2016, are negative for evidence of muscular weakness, or weight gain, as well as for evidence of bradycardia or sleepiness. In a November 2016 VA treatment record, the Veteran reported, in part, she had a feeling of coldness more now; however, it was not clear if such was endorsed as a symptom of cold intolerance and such was not noted in the September 7, 2016 VA medical letter described above. In another November 2016 VA treatment record, the Veteran reported, in part, intermittent palpitations infrequently; however, the same record found the Veteran's heart had a regular rate and rhythm. Moreover, in a subsequent November 2016 VA treatment record, the Veteran affirmatively denied cardiovascular problems including chest pain, shortness of breath, or cough, and such was not reported in the September 7, 2016 VA medical letter discussed above. Furthermore, with respect to bradycardia, a rate of less than 60 beats per minute was not consistently found in VA treatment records and nor was such endorsed as a diagnosis. With respect to weight gain, as noted above, the Veteran's weight was documented as 237 pounds in December 2010 and was documented 238 pounds in a June 2017 VA treatment record. As above, the Board finds that, given the relative relatively small increase in the Veteran's weight throughout the appeal period, the Veteran's hypothyroidism has not resulted in weight gain for the purposes of Diagnostic Code 7903. Furthermore, the Board reemphasizes that ongoing treatment records dating after September 7, 2016, are negative for evidence of muscular weakness, bradycardia, or sleepiness attributable to hypothyroidism, nor were these symptoms identified as part of the Veteran's hypothyroidism in the September 7, 2016 VA medical letter, described above. In this regard, Board concludes that the medical findings and reports to medical professions during the course of treatment are more credible and probative than information by the Veteran during an examination provided for purposes of the claim for increased compensation. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (the credibility of a witness can be impeached by a showing of interest, bias, or inconsistent statements).

Furthermore, as discussed in detail above, while the Veteran claimed mental disturbance, such has been attributed to her already service-connected acquired psychiatric condition. Furthermore, as noted above, with respect to sleepiness, the Veteran also has a diagnosis of sleep apnea. For these reasons, even contemplating the Veteran subjective complaints, the Board finds that the criteria for a staged initial disability rating in excess of 30 percent for hypothyroidism have not been met or more closely approximated during any point for the period on or after September 7, 2016. Because the preponderance of the evidence is against an initial rating in excess of 30 percent for hypothyroidism from September 7, 2016, forward, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3, Gilbert, 1 Vet. App. at 55.

In adjudicating a claim the Board must assess the competence and credibility of the Veteran. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board acknowledges the Veteran's assertions that her hypothyroidism is more severe than evaluated, to include in her September 2016 testimony, in which she, in part, testified that she had symptoms sluggishness, pain, palpitations, sweats, constipation, cold intolerance, menstruation, dry mouth, excessive thirst, and hair loss, and her hypothyroidism also impacted her eyesight and skin. Her endorsements are admissible and have been taken into consideration. See Layno v. Brown, 6 Vet. App. 465 (1994). However, the Veteran has not been shown to have the requisite knowledge or training to be deemed competent to identify a specific level of hypothyroidism according to the appropriate diagnostic code criteria. 

In sum, the preponderance of the evidence is against the assignment of higher staged initial ratings at any point during the period on appeal. 38 C.F.R. § 4.119, Diagnostic Code 7903. Accordingly, entitlement to higher staged initial evaluations for hypothyroidism, rated as 10 percent prior to September 7, 2016, and 30 percent on and after September 7, 2016, are denied.

Finally, neither the Veteran nor her representative has raised any other issues, nor have any other issues been reasonably raised by the record for hypothyroidism. See Doucette v. Shulkin, 28 Vet. App. 366 (2017).

B. Initial Ratings for Umbilical Hernia

The Veteran contends that higher staged initial ratings are warranted for her umbilical hernia. Service connection has been established for umbilical hernia effective from December 9, 2010. As such, the rating period for consideration on appeal is from December 9, 2010. As noted above, the service-connected umbilical hernia is currently rated noncompensable prior to June 20, 2013, and 20 percent from June 20, 2013, pursuant to 38 C.F.R. § 4.114, Diagnostic Code 7339.

Postoperative umbilical (ventral) hernia is rated under Diagnostic Code 7339. Copeland, 27 Vet. App. at 338. A noncompensable evaluation is assigned for wounds, postoperative, healed, no disability, belt not indicated. A 20 percent rating is assigned for a small ventral hernia, not well supported by a belt under ordinary conditions, or healed ventral hernia or post-operative wounds with weakening of abdominal wall and indication for a supporting belt. A 40 percent rating is assigned for a large ventral hernia, not well supported by a belt under ordinary conditions. A 100 percent rating is assigned for a ventral hernia that is massive and persistent, with severe diastasis of recti muscles or extensive diffuse destruction or weakening of fascial support of abdominal wall so as to be inoperable. 38 C.F.R. § 4.114 (2017).

Keeping the foregoing in mind, following a review of the record, the Board finds that compensable evaluation is not warranted for the period prior to June 20, 2013. In this regard, during a May 2011 fee based examination, the Veteran reported symptoms which included her belly increasing in size, back pain, and gastrointestinal issues. Upon physical examination, the May 2011 examiner found, with respect to there was no inguinal hernia noted, no diastasis recti present, no ventral hernia present, and the examination did not reveal a femoral hernia. In a June 2011 addendum, the May 2011 examiner noted a diagnosis of umbilical hernia should have been included in the diagnosis section. 

Additionally, the clinical treatment records throughout the rating period for consideration prior to June 20, 2013 are largely consistent with the findings in the May 2011 VA examination during this appeal period and do not demonstrate additional symptoms associated with the service-connected umbilical hernia and applicable to the rating criteria that would warrant a compensable evaluation prior to June 20, 2013. For example a December 2009 VA treatment record, although not proximate to the claim as service connection for the umbilical hernia was granted effective December 9, 2010, noted, in part, with respect to the Veteran's abdomen, such was soft, non-tender, and non-distended, and diagnosed a large ventral hernia. Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). A March 2010 VA treatment record noted the Veteran, in part, reported that her umbilical hernia recurred and extended up her abdomen and she reported some discomfort when activity caused her to bulge. Thereafter, a June 2011 VA treatment record noted, in part, the Veteran came in for pressure decrease due to a hernia. Thus, although the December 2009 VA treatment record noted a large ventral hernia, as discussed above, the record is not dated proximate to the claim, and furthermore, the record did not further indicate the existence of a weakening of the abdominal wall and indication for a supporting belt as required for a 20 percent evaluation, or that the hernia was not well supported by a belt under ordinary conditions as required by a 40 percent evaluation. 

Thus, for these reasons, and absent probative evidence a small ventral hernia, not well supported by a belt under ordinary conditions, or healed ventral hernia or post-operative wounds with weakening of abdominal wall and indication for a supporting belt, or other symptoms related to even higher ratings attributable the umbilical hernia, the Board finds that a 20 percent rating or higher, is not more nearly approximated at any point during the rating period on appeal prior to June 20, 2013. Because the preponderance of the evidence is against a compensable initial rating for the umbilical hernia prior to June 20, 2013, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3, Gilbert, 1 Vet. App. at 58.

Next, for the period from June 20, 2013, the Board finds that a higher 40 percent rating is not warranted under Diagnostic Code 7339, as the evidence does not show a large ventral hernia, not well supported by a belt under ordinary conditions. 

The evidence during the relevant period includes a June 20, 2013 hernias disability benefits questionnaire which endorsed a diagnosis of a small ventral hernia, and characterized such as a recurrent hernia which appeared operable and remediable. The June 2013 examiner noted, in part, with respect to her hernia, the Veteran reported a sharp pain now and then. The June 2013 examiner further noted that there was an indication for a supporting belt and that the hernia was not well supported by truss or belt. However, as described above, the June 2013 examiner did not characterize the hernia as large as required for the higher 40 percent evaluation. 

Thereafter, a March 2017 hernias disability benefits questionnaire noted the Veteran reported, with respect to her umbilical hernia, any abdominal strain caused her belly button to pop out and she had to manually reduce it, which was very painful. The March 2017 examiner endorsed a diagnosis of a small ventral hernia, and characterized such as recurrent hernia which appeared operable and remediable. The March 2017 examiner further noted that there was an indication for a supporting belt and that the hernia could be well supported by a truss or belt. The March 2017 examiner's findings are consistent with the assigned 20 percent evaluation in that hernia was characterized as small, rather than large, and a finding the hernia could be well supported by a truss or belt, rather than a finding that such was not well supported by a belt under ordinary conditions. 

A September 2016 VA medical letter, reported in part, the Veteran has been diagnosed with an umbilical hernia and also with a large ventral hernia since after military discharge and that she had been closely monitored as to the size of the hernia which was approximately 1 cm to currently approximately 2 cm. However, although the September 2016 medical letter referenced both an umbilical hernia and large ventral hernia, the other clinical evidence of record only reflects a diagnosis one hernia, alternately characterized as either an umbilical hernia or ventral hernia. In this regard, the Veteran has been service-connected for an umbilical hernia, and properly rated under the diagnostic code for ventral hernia, as discussed above. Furthermore, although the September 2016 medical letter described a "large" ventral hernia since after military discharge, the only characterization of the hernia as large was in the December 2009 VA treatment record, which was not proximate to the claim as discussed above. Furthermore, the characterization of the Veteran's service-connected hernia as large was not endorsed by the May 2011, June 2013 or March 2017 VA examiners. Furthermore, even if the Board accepts the characterization of the service-connected hernia as large, the letter did not state the hernia was not well supported by a belt under ordinary conditions, thus the necessary criteria for a higher 40 percent evaluation would still not be met. 

There are also copious treatment records throughout the rating period from June 20, 2013. They are largely consistent with the findings in the June 2013 and March 2017 disability benefits questionnaires during this appeal period and do not demonstrate additional symptoms, including the characterization of the Veteran's service-connected hernia as large, associated with the service-connected umbilical hernia and applicable to the rating criteria that would warrant compensable evaluation from June 20, 2013. 

For these reasons, even contemplating the Veteran subjective complaints, the Board finds that the criteria for a staged initial rating in excess of 20 percent for umbilical hernia have not been met or more closely approximated at any point during the rating period from June 20, 2013. Because the preponderance of the evidence is against a staged initial rating in excess of 20 percent for umbilical hernia from June 20, 2013, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3, Gilbert, 1 Vet. App. at 55.

The Board acknowledges the Veteran's assertions that her umbilical hernia is more severe than evaluated, to include in her September 2016 testimony, in which she, in part, testified that she had symptoms which included pain when leaning a certain way and that it protruded with physical activity. However, notably, the Veteran, in September 2016 testimony, described a change in the symptomology since 2009, specifically that while the hernia protruded, it did not hurt when it first started and that she never really noticed it. These endorsements are admissible and have been taken into consideration. See Layno, 6 Vet. App. at 469. However, the Veteran has not been shown to have the requisite knowledge or training to be deemed competent to identify a specific level of disability related to her umbilical hernia or to attribute such symptoms to her umbilical hernia. Such competent evidence concerning the nature and extent of the Veteran's umbilical hernia has been provided by VA medical professionals who have objectively examined her. The medical findings directly address the criteria under which her umbilical hernia is evaluated. The Board finds these clinical records to be competent, objective, and probative evidence of record, and is therefore accorded greater weight than the Veteran's subjective complaints related to her umbilical hernia. Moreover, the Veteran's testimony, as described above, as to a change in the symptomology since 2009, specifically that while the hernia protruded, it did not hurt when it first started and that she never really noticed it, which is consistent with the initial noncompensable evaluation for the period prior to June 20, 2013, as well as with the subsequent 20 percent evaluation from June 20, 2013. 

In sum, the preponderance of the evidence is against the assignment of higher staged initial ratings at any point during the rating period on appeal. 38 C.F.R. § 4.114, Diagnostic Code 7339. Accordingly, entitlement to higher staged initial evaluations for umbilical hernia, rated as noncompensable prior to June 20, 2013, and 20 percent from June 20, 2013, are denied. 

Finally, neither the Veteran nor her representative has raised any other issues, nor have any other issues been reasonably raised by the record with his respect to her umbilical hernia appeal. See Doucette, supra.



ORDER

Entitlement to higher staged initial evaluations for hypothyroidism, rated as 10 percent prior to September 7, 2016, and 30 percent from September 7, 2016, are denied.

Entitlement to higher staged initial evaluations for umbilical hernia, rated noncompensable prior to June 20, 2013, and 20 percent from June 20, 2013, are denied.




____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs