﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 190502-13959
DATE: August 31, 2020

ORDER

Entitlement to a rating in excess of 10 percent for status post right foot fractures with mild hallux valgus deformity and hammer toes is denied.

Entitlement to a rating in excess of 10 percent for status post left foot fractures with mild hallux valgus deformity and hammer toes is denied.

Entitlement to a separate 10 percent rating for metatarsalgia is granted.

FINDINGS OF FACT

1. Throughout the appeal period, the Veteran has been in receipt of the maximum schedular rating authorized under Diagnostic Code (DC) 5280 for right hallux valgus and hammer toes.

2. Throughout the appeal period, the Veteran has been in receipt of the maximum schedular rating authorized under DC 5280 for left hallux valgus and hammer toes.

3. The April 2017 VA examination documented the diagnosis of metatarsalgia in both feet.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for hallux valgus and hammer toes, right foot, have not been met. 38 U.S.C. § 1155, 5107(b); 38 C.F.R. § 4.71a, DC 5280.

2. The criteria for a rating in excess of 10 percent for hallux valgus and hammer toes, left foot, have not been met. 38 U.S.C. § 1155, 5107(b); 38 C.F.R. § 4.71a, DC 5280.

3. With resolution of reasonable doubt in the Veteran’s favor, the criteria for a separate rating of 10 percent for bilateral metatarsalgia, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5279.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1998 to February 1999. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law, which will go into effect in February 2019, creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review.

In August 2018, VA received notice that the Veteran chose to participate in VA’s test program, the Rapid Appeals Modernization Program (RAMP). The Board is honoring her choice and, accordingly, this decision has been written consistent with the new AMA framework.

The Veteran selected the Higher-Level Review lane when she submitted the RAMP election form. Accordingly, the January 2019 RAMP rating decision considered the evidence as of the date VA received the RAMP election form. She timely appealed this RAMP rating decision to the Board and selected Direct Review. Direct review is the appeal option to the Board in which a Board decision is issued based on evidence of record at the time of the prior decision. The Board cannot hold a hearing or accept into the record additional evidence in its direct review.

Increase Rating

A disability rating is determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate DCs identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran is competent to testify on factual matters of which he has first-hand knowledge. Washington v. Nicholson, 19 Vet. App. 362 (2005). He is also competent to report symptoms of his right and left foot disabilities. Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). The Veteran is competent to describe his symptoms and their effects on employment or daily activities.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40. Functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. 38 C.F.R. § 4.59 (discussing facial expressions such as wincing, muscle spasm, crepitation, etc.). Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Excess fatigability and incoordination should be considered in addition to more movement than normal, less movement than normal, and weakened movement. 38 C.F.R. § 4.45.

The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. See 38 C.F.R. § 4.59. Although the first sentence of 38 C.F.R. § 4.59 refers only to arthritis, the regulation applies to joint conditions other than arthritis. Burton v. Shinseki, 25 Vet. App. 1, 3-5 (2011).

In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995).

Although pain may cause functional loss, pain itself does not constitute functional loss. Rather, pain must affect some aspect of “the normal working movements of the body,” such as “excursion, strength, speed, coordination, and endurance,” in order to constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011) (quoting 38 C.F.R. § 4.40).

Foot disabilities are governed by the provisions of 38 C.F.R. § 4.71a, DCs 5276 through 5284. In this case, the Veteran’s bilateral foot disability is rated under DCs 5280 for hallux valgus, unilateral. 

Under DC 5280, a maximum 10 percent rating is warranted for hallux valgus, operated with resection of the metatarsal head, or for hallux valgus that is severe, if equivalent to amputation of the great toe. 38 C.F.R. § 4.71a.

Analysis 

The Veteran contends that her disability is more severe than the ratings depict. 

In April 2017, the Veteran was afforded a VA examination to determine the severity of her hallux valgus and hammer toes. The Veteran experienced bilateral foot pain, swelling, and aching. She stated that these symptoms had increased over the past 18 months. She complained of bilateral foot pain with prolonged walking. She was unable to exercise, especially with walking or running. She stated that instead of providing comfort, massages could be very painful. She tried special shoes to see if the shoes would help alleviate the pain. Resting and elevating her feet were the only things that helped relieve the pain.

The examiner diagnosed the Veteran with bilateral metatarsalgia, hammertoes, hallux valgus, and status post left and right feet fractures with mild hallux valgus deformity and hammer toes. At the time of the exam, the Veteran did not report pain, flare-ups that impacted the function of her feet, or functional loss or impairment. She did not have Morton Neuroma, hallux rigidus, acquired pes cavus (claw foot), and there was no effect on plantar fascia due to pes cavus. She did not have dorsiflexion and varus deformity due to pes cavus. The Veteran had bilateral metatarsalgia and stated that she just rested her feet. She also had right and left foot hammer toes of the second toes and little toes, and mild or moderate hallux valgus. However, she had not had surgery for her hallux valgus. The Veteran had a mild hairline fracture on her right lateral foot. The hairline fracture did not chronically compromise weight bearing, and she did not require arch supports, custom orthotic inserts or shoe modifications. She had not had foot surgery. During the physical exam, the examiner noted pain on the Veteran’s feet. The examiner stated that the pain did not contribute to functional loss or functional loss for the left or right lower extremities attributable to the foot condition because the pain was subjective only. The examiner noted bilateral pain, weakness, fatigability, and/or incoordination that significantly limited functional ability during flare-ups or when the foot was used over a period of time. However, the examiner was unable to determine without resorting to mere speculation if there was functional loss due to pain, during flare-ups, and/or when the joint was used repeatedly over a period of time. The examiner did not note any other functional loss during flareups or when the foot was used repeatedly over a period of time. There were no other pertinent physical findings, complications, conditions, signs, symptoms and/or scars related to the Veteran’s bilateral foot condition or treatment of her condition. She did not use any assistive devices as a normal mode of locomotion. Functioning was not so diminished that amputation with prosthesis would equally service the Veteran. Imaging did not reveal traumatic arthritis, and there were no other significant diagnostic test findings or results. The Veteran’s disability did not have an impact on her ability to perform any type of occupational tasks. 

In her October 2017 Substantive Appeal, the Veteran stated that she endured 17 years of pain and painful walking. On several occasions, she has fallen due to the pain. She stated that her most recent fall was in May 2017. This caused her to break her big left toe. Additionally, the disability has caused her life-altering pain and frequent falls/trips. 

Although outside the period on appeal, in April 2019, the Veteran was afforded a VA examination to determine the severity of her bilateral foot disability. The examiner confirmed the Veteran’s hallux valgus diagnosis. Imaging was performed; however, there was no evidence of degenerative or traumatic arthritis, and there were no other significant diagnostic test findings or results. The examiner stated that there was no objective evidence of continued symptoms from the historical fractures. The examiner noted that these fractures were resolved and did not warrant a current diagnosis. The Veteran’s disability did not impact her ability to perform any type of occupational tasks. 

Based on the evidence, the Board finds that a rating in excess of 10 percent for bilateral hallux valgus and hammer toes is not warranted. The 10 percent ratings already assigned are the maximum ratings available under DC 5280. As a result, a rating in excess of 10 percent under DC 5280 is not available.

The Board has also considered the provisions of 38 C.F.R. §§ 4.40, 4.45, and 4.59, and the holdings in DeLuca. DeLuca v. Brown, 8 Vet. App. 202. However, higher ratings are not warranted on the basis of functional loss due to pain or weakness in this case. First, the provisions of DeLuca only apply when a DC is predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7, 9 (1996). Here, DC 5280 is not based on limitation of motion.

Even assuming DeLuca applies, as noted above, the Veteran has presented with complaints of pain, swelling, and aching. These symptoms have been reported and have been included and considered in the VA examination. As such, the Veteran’s subjective complaints are fully contemplated by the 10 percent ratings that have already been assigned for the bilateral foot disabilities. DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.40, 4.45, 4.59.

Further, the Board has reviewed all criteria pertaining to the foot and finds that DCs 5276, 5277, 5278, 5281, and 5283, are not applicable as the medical evidence does not show that the Veteran has bilateral pes planus; weak foot; acquired pes cavus/claw foot; hallux rigidus; hallux valgus, or malunion or nonunion of the tarsal, or metatarsal bones. 

As the Veteran’s disability is specifically contemplated by DC 5280, evaluation under the general category of DC 5284 for other foot injuries is inappropriate. See Copeland v. McDonald, 27 Vet. App. 333 (2015) (holding that when a condition is specifically listed in the Schedule, it may not be rated by analogy).

The Board finds that a separate evaluation is warranted for metatarsalgia. Under DC 5279, a maximum rating of 10 percent is warranted for metatarsalgia, anterior (Morton’s disease), unilateral or bilateral. 38 C.F.R. § 4.71a, DC 5279. The Board notes that the April 2017 VA examiner diagnosed the Veteran with metatarsalgia. However, other than stating that the Veteran rests her feet, the Board notes that the examiner did not note the Veteran metatarsalgia symptoms. However, after affording the Veteran the benefit of the doubt, the Board finds that a separate 10 percent rating is warranted for the Veteran’s condition. 

Additionally, the VA examiner diagnosed the Veteran with bilateral hammer toes of the second and little toe. Under DC 5282 (hammer toe), a noncompensable rating is warranted for hammer toes of the single toes. A 10 percent is warranted for hammer toes of all toes, unilateral without claw foot. 38 C.F.R. § 4.71a. In this case, the record does not reflect that the Veteran has been diagnosed with hammer toes of all toes. Therefore, a compensable rating is not warranted under DC 5282.

The Board has considered the Veteran and her representative’s statements regarding the severity of her bilateral hallux valgus and hammer toes. Specifically, the Veteran statement of pain which caused her to fall and, in May 2017, break her big toe. However, the Board notes that lay persons do not have the training or expertise to render a competent opinion which is more probative than the VA examiners’ findings, as this is a medical determination that is complex. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Barr v. Nicholson, 21 Vet. App. 303, 309 (2007); Layno v. Brown, 6 Vet. App. 465, 469-71 (1994)). Additionally, the April 2019 examiner noted that imaging did not reveal significant diagnostic test findings or results. The examiner also stated that there was no objective evidence of continued symptoms from the historical fractures. The Board finds that the lay opinions are outweighed by the VA examiners’ opinions. See id.; see also King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012) (affirming the Court’s conclusion that the Board did not improperly discount the weight of a lay opinion in finding a medical expert’s opinion more probative on the issue of medical causation). 

Therefore, the Board finds that the preponderance of the evidence is against finding that the Veteran’s disability picture more nearly approximates a rating in excess of 10 percent.

 

 

MICHAEL LANE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Moore

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.