﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/20 Archive Date: 10/30/20

DOCKET NO. 200706-95697
DATE: October 30, 2020

ORDER

Entitlement to service connection for obstructive sleep apnea, to include as secondary to service-connected tinnitus, is denied. 

Entitlement to an initial evaluation in excess of 10 percent for tinnitus is denied.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that the Veteran has obstructive sleep apnea which began during active service, is otherwise related to an in-service injury or disease, or is proximately due to or aggravated beyond its natural progression by his service-connected tinnitus. 

2. Throughout the appeal period the Veteran’s bilateral tinnitus has been assigned a 10 percent rating, which is the maximum evaluation authorized under the governing diagnostic code.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for obstructive sleep apnea, to include as secondary to service-connected tinnitus, have not been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.310.

2. The criteria for entitlement to an initial evaluation in excess of 10 percent for tinnitus have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.87, Diagnostic Code 6260.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from December 1965 to October 1969.

The February 2020 rating decision on appeal was issued on March 10, 2020 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. In the subsequent July 2020 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD), the Veteran elected the Direct Review option; therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301. 

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claims, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

1. Entitlement to service connection for obstructive sleep apnea, to include as secondary to service-connected tinnitus, is denied.

The Veteran contends service connection for sleep apnea is warranted. Specifically, in an October 2020 brief, the Veteran’s representative argued, in part, the Veteran submitted an August 1993 sleep study which diagnosed sleep apnea with symptoms noted since 1975 and that it was safe to presumed that the Veteran’s symptoms started well before that, as persons with no problems sleeping would not likely be scheduled for a sleep study. In the October 2020 brief, the Veteran’s representative also first raised the theory of secondary service connection, specifically that the Veteran’s sleep apnea was secondary to his service-connected tinnitus. 

Generally, service connection may be established for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. To establish service connection on a direct incurrence basis, the Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may also be granted for a disability that is proximately due to, or aggravated by, service-connected disease or injury. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 448 (1995).

The February 2020 rating decision noted a favorable finding that an August 1993 sleep study showed a diagnosis of sleep apnea, with symptoms noted since 1975.

The question for the Board is whether the Veteran has a current disability of sleep apnea that began during service, is at least as likely as not related to an in-service injury, event, or disease, or is proximately due to or the result of, or is aggravated beyond its natural progress by, service-connected tinnitus.

Direct incurrence basis

The Board finds the Veteran has a current disability of obstructive sleep apnea as evidenced by an August 1993 private medical record which, in part, referenced a polysomnogram and endorsed a diagnosis of obstructive sleep apnea. Similarly, a December 1993 private medical record documented, in part, the Veteran suffered from obstructive sleep apnea. Additionally, VA treatment records, most recently dated in November 2007, noted the Veteran had a history of continuous positive airway pressure (CPAP) therapy for the past 11 years. Thus, while the August 1993, December 1993 and November 2007 medical records are not dated proximate to the claim, received by VA in February 2020, as there is no evidence that the Veteran’s obstructive sleep apnea has improved or resolved, the Board will resolve all reasonable doubt in the Veteran’s favor, and find he has a current disability of obstructive sleep apnea. Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). As such, the first Shedden element for direct-incurrence service connection has been met. However, the preponderance of the evidence is against finding that the Veteran’s obstructive sleep apnea is related to an in-service injury, event, or disease. 38 U.S.C. § 1110; 38 C.F.R. § 3.303 (a), (d).

Review of the Veteran’s service treatment records reveals no diagnoses of obstructive sleep apnea or symptoms thereof. Furthermore, the Veteran’s October 1969 in-service examination, conducted in conjunction with his separation from service, documented the Veteran’s nose, and his lungs and chest, as relevant to sleep apnea, were clinically normal upon examination, which also weighs against a finding of an in-service injury or event. In this regard, Board finds that if the Veteran had experienced sleep apnea or related symptoms while in service, it would have been documented during the October 1969 separation examination; however, as discussed, there is no record of a diagnosis of sleep apnea, or complaints thereof. Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (where there is a lack of notation of medical condition or symptoms where such notation would normally be expected, the Board may consider this as evidence that the condition or symptoms did not exist).

Moreover, a July 1993 private medical record documented the Veteran’s sleep schedule was somewhat reversed as he had been a shift worker since the 1960’s, specifically that his normal time to get to work was midnight and he quit work at 6 a.m. Thus, rather than linking at the Veteran’s sleep disturbance to his active service, the July 1993 private medical record described the Veteran engaged in post-service employment as a shift worker. 

Further, the clinical treatment records show the Veteran was not diagnosed with obstructive sleep apnea until many years after his separation from service. Specifically, a July 1993 private medical record documented, in part, the Veteran had complains of daytime hypersomnolence since 1975 and that his symptoms of daytime sleepiness had progressively worsening through 1993. Similarly, a December 1993 private medical record documented, in part, the Veteran suffered from obstructive sleep apnea, and that he was first diagnosed with this condition in July 1993 but had complaints consistent with the presence of sleep apnea since 1975. Additionally, an October 2004 VA treatment record documented the Veteran reported he had obstructive sleep apnea, used a CPAP machine with good result and a November 2007 VA treatment noted the Veteran had a history of CPAP therapy for the past 11 years. 

Thus, clinical treatment records reflect the Veteran was first diagnosed with obstructive sleep apnea, at the earliest, in July 1993, many years after his separation from service. Further, the July 1993 and December 1993 private medical records documented, in part, the Veteran had complaints consistent with the presence of sleep apnea since 1975; however, the onset of the Veteran’s sleep apnea symptomology in 1975 was approximately six years after his separation from service. While not dispositive, the passage of so many years between discharge from active service and objective documentation of a disability is a factor that weighs against a finding of service incurrence. Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). The Board’s reliance on multiple factors, only one of which is an absence of complaints or treatment during the years after service, is consistent with the statutory and regulatory requirements to consider all evidence of record, as well as applicable precedential decisions. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (the lack of contemporaneous medical records is one factor the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible).

Additionally, in the October 2020 brief, the Veteran’s representative argued, in part, that as an August 1993 sleep study diagnosed sleep apnea with symptoms noted since 1975, it was safe to presume that the Veteran’s symptoms started well before that, as persons with no problems sleeping would not likely be scheduled for a sleep study. However, as discussed above, a July 1993 private medical record noted the Veteran had complaints of daytime hypersomnolence since 1975 and a December 1993 private medical records documented, in part, the Veteran had complaints consistent with the presence of sleep apnea since 1975. Thus, contrary to the Veteran’s representative’s argument, the Veteran’s private medical records dated in July 1993 and December 1993, clearly reflect the Veteran’s symptoms started in 1975, approximately six years after his separation from service. Further, if the Veteran had reported his symptoms onset prior to 1975, these records dated in 1993 would have documented his report of an earlier onset date. 

Additionally, the July 1993 private medical record noted the Veteran’s symptoms of daytime sleepiness had progressively worsening through 1993. Thus, the July 1993 private medical record reflects the Veteran sought treatment after progressive worsening through 1993, that a sleep study was ordered in 1993, and he was diagnosed with obstructive sleep apnea in 1993. Thus, there is no indication that the Veteran had any sleep apnea symptomology prior to 1975. Moreover, the Veteran not claimed, and the evidence does not suggest, that he experienced sleep apnea symptomology during active service. 

Thus, the most probative evidence weighs against demonstration of any in-service diagnoses or complaints related to obstructive sleep apnea, or demonstration of a relevant in-service injury, event or disease, and the second Shedden element of a claim for service connection on a direct incurrence basis is not met. Thus, while the AOJ did not obtain an opinion on a direct-incurrence basis, the standard for VA to provide an examination for this claim was not satisfied. In this instance, as discussed above, the most probative evidence weighs against any evidence of in-service sleep apnea or symptoms thereof. Moreover, the Board reiterates that the clinical evidence of record reflects the Veteran had complaints consistent with the presence of sleep apnea since 1975, which is approximately six years after his separation from service. 38 U.S.C. § 5103A (d); 38 C.F.R. § 3.159 (c)(4)(i); McLendon v. Nicholson, 20 Vet. App. 79, 81-82 (2006). Additionally, as the second element for the claim for service connection for obstructive sleep apnea on a direct-incurrence basis is not met, the third Shedden element for service connection, competent evidence of a nexus between obstructive sleep apnea, and an in-service injury, event, or disease, need not be further discussed.

Secondary service connection basis

The Board concludes that, as discussed above, resolving reasonable doubt the Veteran’s favor, he has a diagnosis of obstructive sleep apnea; however, the preponderance of the evidence is against finding that it is proximately due to or the result of, or aggravated beyond its natural progression by, service-connected tinnitus. 38 C.F.R. § 3.310 (a); Allen, 7 Vet. App. at 448.

As discussed above, in an October 2020 brief, the Veteran’s representative first raised the theory that the Veteran’s obstructive sleep apnea was secondary to his service-connected tinnitus. However, under the AMA, a record on appeal may be developed further by a remand to the AOJ when it has committed a pre-decisional duty to assist error. 38 C.F.R. §§ 3.159(c), 20.802(a). The error must have been committed prior to the issuance of the decision being reviewed. 38 C.F.R. § 20.802(a). Thus, as the Veteran’s representative first raised the theory of secondary service connection in an October 2020 brief, subsequent to the February 2020 rating decision at issue, the lack of a VA examination or opinion addressing the claim on a secondary basis does not constitute a pre-decisional duty to assist error. 38 C.F.R. §§ 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 81-82 (2006). Thus, remand for a VA examination or opinion addressing the claim on secondary basis is not warranted. 

Nonetheless, VA has a duty to address all arguments put forth by a claimant and/or theories under which entitlement to benefits sought may be awarded. See generally Schroeder v. West, 212 F.3d 1265 (Fed. Cir. 2000). Here, in the October 2020 brief, the Veteran’s representative raised the theory of secondary service connection but did not identify that he was a medical professional or indicate that he was providing an expert medical opinion. Thus, to the extent the Veteran’s representative provided general argument in the October 2020 brief as to the theory of secondary service connection, the Board will address this theory of entitlement. Harvey v. Shulkin, 30 Vet. App. 10 (2018). 

While the Veteran’s representative may believe the Veteran’s obstructive sleep apnea is proximately due to, the result of, or aggravated beyond its natural progression by, his service-connected tinnitus, he has not been shown to be competent to provide a nexus opinion regarding this issue. The issue is medically complex, as it requires knowledge of anatomical relationships. Therefore, it is outside the competence of the Veteran’s representative in this case because the record does not show that he has the skills or medical training to make such a determination. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). Specifically, the Board finds the bare assertion from the Veteran’s representative, in terms of raising the theory that the Veteran’s obstructive sleep apnea is secondary service-connected tinnitus, to be a mere conclusory generalized lay statement and lacks probative value. 

Thus, there is no competent evidence the Veteran’s obstructive sleep apnea is proximately due to or the result of, or aggravated by, service-connected tinnitus. 

Conclusion

While the Veteran may believe his obstructive sleep apnea is due to active service, is otherwise related to an in-service injury or disease, or is proximately due to or aggravated beyond its natural progression by his service-connected tinnitus, he has not been shown to be competent to provide a nexus opinion regarding this issue. These issues are medically complex, as they require specialized training or knowledge of anatomical relationships. Therefore, it is outside the competence of the Veteran in this case because the record does not show that he has the skills or medical training to make such a determination. Jandreau, 492 F.3d at 1377.

As discussed above, the most probative evidence of record does not demonstrate in-service incurrence or aggravation of obstructive sleep apnea. Additionally, there has been no demonstration by competent evidence that the Veteran’s obstructive sleep apnea is proximately due to, or aggravated by, service-connected tinnitus. Based on the foregoing, the Board finds that the preponderance of the evidence is against a grant of service connection for obstructive sleep apnea. In reaching the above conclusion, the Board has considered the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim for service connection for obstructive sleep apnea, including as secondary to service-connected tinnitus, the doctrine of resolution of doubt in the Veteran’s favor is not applicable, and service connection must be denied. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

2. Entitlement to an initial evaluation, from December 19, 2019 to March 10, 2020, in excess of 10 percent for tinnitus is denied.

The Board acknowledges that the Veteran by virtue of filing an appeal believes that his tinnitus has been more severe than the assigned disability rating reflects; however, he has not provided a specific basis for the Board to consider. In this regard, during a VA examination conducted in February 2020, the Veteran reported having recurrent tinnitus.

Disability evaluations are determined by comparing a veteran’s symptoms with criteria set forth in VA’s Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

The February 2020 rating decision did not make any favorable findings with respect to the Veteran’s tinnitus but granted service connection for tinnitus. Specifically, the February 2020 rating decision assigned a 10 percent evaluation for the Veteran’s tinnitus, pursuant to Diagnostic Code 6260, for recurrent tinnitus, effective December 19, 2019.

Throughout the entire initial rating period on appeal, from December 19, 2019 to March 10, 2020, the Veteran has been in receipt of a 10 percent disability rating for his bilateral tinnitus. Under Diagnostic Code 6260, a single 10 percent rating is assigned for tinnitus, whether the sound is perceived as being in one ear, both ears, or in the head. 38 C.F.R. § 4.87, DC 6260, Note 2. The maximum schedular rating available for tinnitus is 10 percent. 38 C.F.R. § 4.87; see also Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006). Further, as tinnitus is specifically contemplated by the Rating Schedule, it may not be rated by analogy. Copeland v. McDonald, 27 Vet. App. 333, 337 (2015).

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 370-71 (2017). Thus, as the maximum schedular rating for tinnitus has 

 

already been assigned, there is no legal basis upon which to award a higher schedular evaluation, the Veteran’s appeal must be denied. Sabonis v. Brown, 6 Vet. App. 426 (1994).

 

 

M. C. GRAHAM

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Espinoza, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.